# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MARK CLAYTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **LAUREN HOGAN, GLENN FUNK,** ) | Case No. 3:22-cv-00936 |
| **AMY HUNTER, TOM PALKO, JOHN** ) | Judge Aleta A. Trauger |
| **HONEYSUCKER, KIMBERLY HAYES.** ) | |
| **HAL BATHROP, CYRUS TOOSI, SCOTT** ) | |
| **POTTER, BILL YOUNG, TOM** ) | |
| **LAWLESS, PAIGE BURCHAM DENNIS,** ) | |
| **METROPOLITAN NASHVILLE** ) | |
| **GOVERNMENT, and SCRIPPS HOWARD** ) | |
| **PUBLISHING COMPANY d/b/a** ) | |
| **NEWSCHANNEL 5,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Scripps Howard Publishing Company d/b/a NewsChannel 5 has filed a Motion to Dismiss (Doc. No. 97), to which Mark Clayton has filed a Response (Doc. No. 101), NewsChannel 5 has filed a Reply (Doc. No. 102), and Clayton has filed a Sur-Reply (Doc. No. 104). Clayton has filed a Motion for Extension of Time Under Rule 6(b) for Rule 4(m) Deadline (Doc. No. 105), to which NewsChannel 5 has filed a Response (Doc. No. 106), Clayton has filed a Reply (Doc. Mo. 107), and NewsChannel 5 has filed a Sur-Reply (Doc. No. 110). For the reasons set out herein, NewsChannel 5's motion will be granted, and Clayton's motion will be denied as moot.

# I. BACKGROUND[1]

Clayton owns a tract of property with a stream that passes through it and into an adjacent tract owned by his neighbors, Joseph and Faye Dixon. Around 2016, the Dixons installed a culvert that, Clayton says, has caused flooding and erosion on his property. Dixon and the Claytons are involved in litigation regarding the culvert in Tennessee state court. (Doc. No. 90 ¶¶ 22–25.)

Clayton believes that the Metropolitan Government of Nashville and Davidson County ("Metro") is complicit in the situation and should play a role in solving it. (*Id.* ¶¶ 24, 26–29.) In an effort to obtain relief, Clayton entered into communication with various Metro officials, but those dealings, which persisted for years, turned acrimonious, and, on April 23, 2019, Clayton was arrested and charged with harassing Metro employees. (*Id.* ¶ 78.)

Those charges were ultimately dismissed. (*Id.* ¶¶ 80–81.) As part of his defense, however, Clayton had intended to rely on testimony by Metro Councilman Jonathan Hall, who was also a witness in the civil dispute between Clayton and the Dixons. Around early 2022, Hall was assessed fines in what Clayton has described as "an exorbitant amount" for alleged violations of Tennessee campaign finance laws. Clayton believes that the fines were retaliation for Hall's support of Clayton. (*Id.* ¶¶ 94–96.)

On May 18, 2022 Clayton attended a meeting of the Tennessee Registry Of Election Finance, where the fines against Hall were to be discussed. The day before, Clayton, in his words, "made one phone call to the [Registry] to put them on notice that he would appear as a witness, adverse to the State, and also as an interested party." (*Id.* ¶ 99.) Whatever occurred in advance of the meeting, it led Members of the Registry to ensure that a state trooper was present.

---

[1] Unless otherwise indicated, these facts are from the Corrected Second Amended Complaint (Doc. No. 90) and are accepted as true for the purposes of the pending motions.

(*Id.* ¶ 110.) Clayton's Second Amended Complaint is unclear regarding what happened at the meeting, but he states that (1) he "was interrupted by [Registry Member] Paige Dennis by her making a false assertion, in the form of a question, that Plaintiff made threats" during his call to the Registry, and (2) he was removed from the meeting by the state trooper. (*Id.* ¶¶ 108–11.)

A reporter for NewsChannel 5, a local television news operation, attended the meeting, and Clayton says that he explained the full situation to that reporter. Clayton, however, was unhappy with the story that NewsChannel 5 ultimately ran on the matter, which, Clayton says, mischaracterized Clayton's exchange with Dennis and the reasons for his eventual removal. Clayton alleges, in particular, that NewsChannel 5 published the online version of the story in a manner intended to give a false impression through Google search results. Specifically, he complains that the webpage featuring the story included code in its metadata designating the "title" for the page to be "Trooper removes man who made threats from state meeting," as opposed to something recognizing that Clayton's threats were merely alleged and did not occur during the meeting itself. [2] When a person actually went to the webpage, however, the headline used the phrase "reportedly making threats," as opposed to simply "making threats," and the story itself provided the fuller context. (*Id.* ¶¶ 212–13.)

On November 17, 2022, Clayton filed his Complaint in this case, in which he named as defendants Metro, various officials, and an entity identified as "Fox News Channel 5 Nashville." (Doc. No. 1 at 1.) There is no such organization, and it does not appear that the actual NewsChannel 5 has any affiliation with any of the various media entities operating under the "Fox" name. Nevertheless, it appears that Clayton was trying to refer to NewsChannel 5. (*See id.*

---

[2] As the court understands this allegation, NewsChannel 5, as the entity that published and had control over the webpage, had the power to include code that would dictate how the title of the page would appear in certain settings, including in Google search results. Clayton is alleging that NewsChannel 5's code omitted the word "reportedly" in designating the title.

3

¶ 11.) Clayton did not obtain issuance of a summons to any defendant at the time of the initial filing.

On January 11, 2023, Clayton filed a First Amended Complaint (Doc. No. 5), in which he omitted "Fox News Channel 5 Nashville" as a defendant, without replacing it with the actual NewsChannel 5 or any other media entity defendant. (Doc. No. 5.) He did so, he says, not because he realized that he had used the wrong name, but because he had not yet complied with Tennessee's statutory requirement of a pre-suit demand for a retraction. *See* Tenn. Code Ann. § 29-24-103(a). Clayton finally served the remaining defendants, who filed Motions to Dismiss raising a number of arguments. (*See* Doc. Nos. 31, 35, 37.)

On April 6, 2023, while those motions were still pending, an attorney representing Clayton sent an email to (the real) NewsChannel 5 demanding a retraction and stating that, if one was not published within ten days, NewsChannel 5 would "be added to the ongoing litigation." (Doc. No. 55-4 at 2.) The attorney explained Clayton's allegation as follows:

> On May 18th, 2022, your news organization published a provably false story regarding my client. The tagline of your story, which comes up first on a Google Search of "Mark Clayton, Jonathan Hall", falsely states "Trooper removes man who made threats at state meeting." Only when someone clicks through to the story does it say "Trooper removes angry man from meeting after REPORTEDLY making threats against the TN Registry."

(*Id.* at 2.) The email gave an account of Clayton's version of the underlying events, but it did not identify any other specific aspect of the story or webpage meriting retraction. (*Id.*) An attorney representing NewsChannel 5 "responded that it stood by its story," citing the use of "reportedly" in the headline. (Doc. No. 90 ¶ 216.) Clayton's attorney responded by explaining that, "if you look at the HTML[3] tag codes you can see where News Channel Five published in its website

---

[3] "HTML is a web publishing language. It describes the layout of objects (such as text, image, video, etc.) in a browser." *Opal Run LLC v. C & A Mktg., Inc.*, No. 2:16-CV-24-JRG-RSP, 2017 WL 3381344, at *1 (E.D. Tex. May 15, 2017) (citations omitted).

4

search tags the phrase 'Trooper removes man who made threats from state meeting.'" (*Id.* ¶ 217.) NewsChannel 5, however, did not change the code. (*Id.* ¶ 219.)

On May 17, 2023, Clayton filed a Motion for Leave to File a Second Amended Complaint (Doc. No. 48), in which he sought leave to, among other things, add NewsChannel 5 as a defendant. Clayton—somewhat inaccurately—stated that he had "initially" included NewsChannel 5 "as a defendant in this action, but removed [NewsChannel 5] from his First Amended Complaint to comply with the statutory requirement that media organizations be given 10 days to retract alleged defamation." (*Id.* at 1.) The proposed Second Amended Complaint no longer referred to NewsChannel 5 as a "Fox" entity, but it also failed to identify it as a d/b/a of Scripps Howard Publishing Company, and it omitted NewsChannel 5 from the caption. (*See* Doc. No. 49-1.)

On November 16, 2023, the court issued a Memorandum and Order granting in part and denying in part the various motions to dismiss. (Doc. Nos. 71–72.) The court dismissed some claims but allowed others to proceed, and, while it rejected some proposed amendments, it granted leave for others, including an amendment adding NewsChannel 5 as a party. (Doc. No. 72 at 1.) Following the resolution of some procedural issues, a Second Amended Complaint was ultimately placed on the docket on December 1, 2023. (Doc. No. 79.) That Second Amended Complaint, however, still failed to include NewsChannel 5 in the caption, and no summons issued. (*See id.* at 1.)

On March 15, 2024, Clayton filed a Motion for Leave to File a Corrected Second Amended Complaint to rectify that error. (Doc. No. 88.) The court granted the motion, and a Summons was finally issued to NewsChannel 5 on April 22, 2024. (Doc. No. 92.) As the court reads the Corrected Second Amended Complaint, there are now two claims pending against

5

NewsChannel 5: a claim for defamation and a claim for false light invasion of privacy. (Doc. No. 90 ¶¶ 209–19.)

On June 21, 2024, NewsChannel 5, having finally been served with the Corrected Second Amended Complaint, filed a Motion to Dismiss. (Doc. No. 97) NewsChannel 5 argues that Clayton's claims against it are untimely and barred by Tennessee's fair report privilege. In the alternative, NewsChannel 5 asks the court to sever the claims against it from the rest of the case, which largely concerns Clayton's lengthy dispute with local and state officials, rather than NewsChannel 5's news story. (Doc. No. 97 at 1–2.)

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the

plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

#### A. Timeliness

Under Tennessee law, the statute of limitations for "slanderous words" that were merely "spoken" by the defendant is six months, Tenn. Code Ann. § 28-3-103, and the statute of limitations for libel—that is, published defamation—is one year, Tenn. Code Ann. § 28-3-104(a)(1)(A). "[F]alse light claims are subject to the" same applicable statute of limitations, depending on the form of the utterance. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 648 (Tenn. 2001). Because Clayton's allegations against NewsChannel 5 involve written text in the code of a webpage, a one-year statute of limitations applies.

NewsChannel 5's story was posted on or around May 18, 2022, and this lawsuit was filed within a year of that date, on November 17, 2022. NewsChannel 5, however, was not technically named in that lawsuit. Rather, Clayton *tried* to sue NewsChannel 5, but, in addition to having failed to comply with the required pre-filing retraction demand, he got the entity's name wrong and removed that defendant by amendment shortly after the initial filing. Clayton did not formally seek to add Scripps Howard Publishing Company d/b/a NewsChannel 5 as a defendant until his March 15, 2024 Motion for Leave to File a Corrected Second Amended Complaint (Doc. No. 88). NewsChannel 5 argues that the claims are, therefore, untimely. See *United States v. Katz*, 494 F. Supp. 2d 641, 644 (S.D. Ohio 2006) ("Federal courts have uniformly held that a

claim set forth in an amended pleading is timely under the applicable statute of limitations, if the motion for leave to amend was filed before the statute of limitations had run.") (collecting cases).

The basics of this type of situation—in which a defendant was misidentified in an initial complaint—were foreseen and addressed by the Federal Rules of Civil Procedure. Generally speaking, an amendment that "adds a new party creates a new cause of action[,] and there is no relation back to the original filing for purposes of limitations." *In re Kent Holland Die Casting & Plating*, 928 F.2d 1448, 1449 (6th Cir. 1991). Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, however, creates an exception whereby a plaintiff may amend his complaint to change the party or the naming of the party against whom a claim is asserted, and that amendment will relate back to the date of the original pleading if: (1) the claim asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) the added party received notice of the suit within the time period for affecting service under Rule 4(m); (3) the notice was such that the added party will not be prejudiced in maintaining a defense on the merits; and (4) the added party knew or should have known that, but for a mistake of the identity of the proper party, the action would have been brought against him. Fed. R. Civ. P. 15(c); *see Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001).

NewsChannel 5 argues that Clayton cannot satisfy Rule 15(c)(1)(C)'s notice requirement because he did not personally provide notice to NewsChannel 5 within the relevant window for affecting service. The notice required by Rule 15(c), however, can be "constructive," meaning that the court's focus should not solely be on whether the plaintiff himself provided such notice, but, rather, "what the party to be added knew or should have known" about the lawsuit and the plaintiff's intentions. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541, 554 (2010).

Accordingly, even if Clayton himself did not provide notice, there is still an open question of whether other factors effectively informed NewsChannel 5 of the lawsuit's existence and Clayton's misplaced attempt to include NewsChannel 5 as a defendant.

The court cannot resolve this issue on the pleadings alone. The general rule is that "[s]tatute-of-limitations defenses are [more] properly raised in Rule 56 motions [for summary judgment], rather than Rule 12(b)(6) . . . motions, because '[a] plaintiff generally need not plead the lack of affirmative defenses to state a valid claim.' " *Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 567 (E.D. Tenn. 2019) (quoting *Paulin v. Kroger Ltd. P'ship I*, No. 3:14-cv-669, 2015 WL 1298583, at *4 (W.D. Ky. Mar. 23, 2015)). Sometimes, if it is "'apparent from the face of the complaint that the time limit for bringing the claim[s] has passed,'" then the plaintiff, if he wishes to avoid dismissal, has an "obligation to plead facts in avoidance of the statute of limitations defense." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). It is, however, not clear from the Corrected Second Amended Complaint that Clayton will be unable to establish notice to NewsChannel 5—nor would it be fair to expect him to make such a showing at the pleading stage, given that much of the relevant evidence of NewsChannel 5's knowledge is likely not available to him. The court, accordingly, will not resolve the issue of timeliness at this stage of the case.

## B. Fair Report Privilege

To state a defamation claim under Tennessee law, a plaintiff must allege that "(1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571

(Tenn. 1999) (citing Restatement (Second) of Torts § 580B (1977)). Tennessee also "recognizes the separate, but related, tort of false-light invasion of privacy, which requires: (1) publicity, (2) that places the plaintiff in a false light, (3) that is 'highly offensive to a reasonable person,' and (4) that the defendant knew of or acted with reckless disregard to the 'falsity of the publicized matter and the false light in which the other would be placed.'" *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 601 (6th Cir. 2013) (quoting *West*, 53 S.W.3d at 643–44). Both torts, however, are subject to a defense based on Tennessee's recognition of the "fair report privilege." *See West*, 53 S.W.3d at 648.

That privilege originates from the principle that "a newspaper [or other journalistic entities] should not be held liable for republishing allegedly defamatory statements made during [an official government] proceeding because such a proceeding 'is open to all the world.'" *Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 211 (Tenn. 2019) (quoting Kathryn Dix Sowle, *Defamation and the First Amendment: The Case for a Constitutional Privilege of Fair Report*, 54 N.Y.U. L. Rev. 469, 478 & n.40 (1979); citing David Elder, *Defamation: A Lawyer's Guide* § 3:1 (July 2018 update)). The privilege thus protects media outlets that "make reports of [official] proceedings to the public, in order that members of the public may be apprised of what takes place in the proceedings without having been present." *Smith v. Reed*, 944 S.W.2d 623, 625 (Tenn. Ct. App. 1996). A statement subject to the fair report privilege must "be 'a fair and accurate summation of the proceeding,' and must display balance and neutrality." *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 284 (Tenn. Ct. App. 2007). When properly asserted, "[t]he privilege can only be defeated by showing that a report about an official action or proceeding was unfair or inaccurate." *Funk*, 570 S.W.3d at 217.

It is undisputed that defendant Paige Dennis alleged, during an official proceeding, that Clayton threatened one or more members of the Registry. A fair and accurate report of that allegation would, therefore, be subject to the fair report privilege—even if the allegation itself had been false or even defamatory on the part of the initial speaker. Clayton, moreover, has not identified any manner in which NewsChannel 5's actual reporting on the story—rather than its title metadata for the webpage of that story—was inaccurate. He has, however, asserted that the coverage was unfair, which is debatable. In some situations, that contestability might mean that the issue of fairness would be reserved for the jury (or, at least, a motion for summary judgment). Tennessee courts, however, have stated that the application of the fair report privilege presents "a question of law to be determined by the [c]ourt." *Smith*, 944 S.W.2d at 624 (citing *Stem v. Gannett Satellite Info. Network, Inc.*, 866 F. Supp. 355, 361 (W.D. Tenn. 1994)). This court, accordingly, can determine whether NewsChannel 5's report was sufficiently fair and accurate to warrant protection.

The court concludes, based on its review of the article itself, that the unfairness that Clayton has alleged does not rise to the level of denying NewsChannel 5 its right to rely on the fair report privilege. NewsChannel 5 did not tell Clayton's story in the manner that he would like, but he had no entitlement to expect a news organization to act as his public relations manager. The story that NewsChannel 5 actually published is a fairly straightforward, factual account of an acrimonious public meeting, as countless media outlets run routinely. (*See* Doc. No. 97-1.) Clayton faults the story for stating that he "rambled for a bit," but video of the meeting is available from the Registry's websitre, and the court finds that characterization

11

neither unfair nor inaccurate.[4] The determinative question, then, is whether the omission of the word "reportedly" (or an equivalent) in the title metadata is so unfair or inaccurate as to preclude application of the privilege.

It does not appear that there is any Tennessee case directly addressing this situation, but the Tennessee Supreme Court has been clear that the version of the fair report privilege applicable in the state is, at least generally speaking, the same well-established privilege derived from the common law and recognized in numerous other U.S. jurisdictions. *See Burke v. Sparta Newspapers, Inc.*, 592 S.W.3d 116, 121 (Tenn. 2019); *Funk*, 570 S.W.3d at 212. Under that traditional conception of the privilege, courts considering whether it is applicable to a particular situation "require that the report of the proceeding be 'substantially accurate,'" not that it be absolutely free of mistakes or ambiguities. 2 Rodney A. Smolla, *Law of Defamation* § 8:76 (2d ed.). The media organization's coverage "need not be a verbatim, technically accurate account in every detail, as long as it conveys a correct and just impression of what took place." *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 284 (Tenn. Ct. App. 2007) (citing Am. Pub. Co. v. Gamble, 90 S.W. 1005, 1008 (Tenn. 1906); *Smith v. Reed*, 944 S.W.2d 623, 625 (Tenn. Ct. App. 1996); *Langford v. Vanderbilt Univ.*, 318 S.W.2d 568, 574 (Tenn. Ct. App. 1958)).

It is plausible that NewsChannel 5's title metadata, taken in isolation, would give a reader a misleading impression regarding the circumstances of Clayton's ejection from the Registry meeting. That metadata, however, never appeared in isolation—by design. It always had some connection to the actual underlying news story. Even in Google search results, the title—which provided very little information about the underlying situation at all—would clearly appear as a link that would be understood by the reader to lead to the actual news story. The actual story,

---

[4] Clayton does not dispute the accuracy of the video, and the court takes judicial notice of its contents as a government document. The file is available at https://www.tn.gov/tref/calendar/2022/5/18/registry-of-election-finance-board-meeting.html.

12

moreover, is crystal clear that it is reporting allegations of threats voiced by members of the Registry, not threats specifically witnessed by the reporter during the meeting:

> [Clayton] accused chairwoman Dennis of making a criminal accusation against him and immediately, someone with the Registry said, "That's it. You're dismissed."
>
> They then asked the trooper who was standing in the back of the room to come forward and escort Clayton out of the building.
>
> As Clayton left, he warned the trooper not to touch him while turning to the Registry before stepping out of the room, saying, "I'll see you in court."
>
> Once the room settled back down, Chairwoman Dennis told those in the audience that Clayton had called the Registry offices Tuesday and made "threatening accusations."
>
> Clayton also reportedly made "inappropriate statements" and used "hot language" that made the staffer who answered the call "concerned."
>
> Registry Executive Director Bill Young said that was why they had taken the unusual step of requesting a trooper attend the meeting.

(Doc. No. 97-1 at 3–4.) The extent to which NewsChannel 5 is entitled to assert fair report privilege, accordingly, depends on whether the fairness and accuracy of its report should be assessed solely based on the specific utterance alleged to have been defamatory—the title—and not the report as a whole.

A number of courts, when considering questions of accuracy in the context of defamation claims,[5] have suggested that "[t]he accuracy of [a] report should be assessed on the publication as a whole, not isolated portions of it . . . ." *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) (quoting *L. Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., Inc.*, 844 F.2d 955, 959 (2d Cir. 1988)); *see also Hoffman v. Washington Post Co.*, 433 F. Supp. 600, 602

---

[5] While "substantial accuracy" tends to come up in the context of the fair report privilege, similar inquiries are called for in the context of other defamation-related issues. *See, e.g.*, *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 514 (1991) ("Petitioner concedes that this absolute definition of falsity in the quotation context is too stringent, and acknowledges that "minor changes to correct for grammar or syntax" do not amount to falsity for purposes of proving actual malice.").

13

(D.D.C. 1977), *aff'd*, 578 F.2d 442 (D.C. Cir. 1978) ("The Court's function is to determine whether the publication, taken as a whole, is defamatory, not whether two isolated statements might not be defamatory if published by themselves."). Although the issue of webpage titles is a relatively new one, moreover, courts have a long history of considering claims based on misleading headlines, and "the majority of jurisdictions support the rule that headlines are to be construed in conjunction with their accompanying articles." *Molin v. Trentonian*, 297 N.J. Super. 153, 157, 687 A.2d 1022, 1023–24 (App. Div. 1997) (collecting cases). This court is aware of no reason why Tennessee's approach would differ.

Courts have also recognized that inquiries into the substantial accuracy of news reporting must account for the fact that initial reports of events that just occurred must, by definition, be "rough-and-ready summar[ies]," not exhaustive accounts. *Yohe v. Nugent*, 321 F.3d 35, 43 (1st Cir. 2003) (quoting *ELM Med. Lab'y, Inc. v. RKO Gen., Inc.*, 403 Mass. 779, 783, 532 N.E.2d 675, 678 (1989)). Accordingly, such a publication "is considered a fair report if its 'gist' or 'sting' is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced." *Id.* (quoting *ELM Med. Lab'y,* 403 Mass. at 783).

By that standard, NewsChannel 5's reporting is entitled to protection. Even if one assumes that the title tag would be unfair and/or inaccurate in isolation, it was only one sentence connected to an actual, reported news story that provided context and detail explaining what happened at the underlying meeting. Clayton argues that the details provided in the report are irrelevant, because individuals who enter his name into a search engine, such as Google, will receive results including the arguably misleading title and may not follow the corresponding link in order to see the fuller context. No media entity, however, can ever fully guard against the fact that a person who chooses to read only a headline or title in search results, without clicking

14

through to the entity's actual substantive reporting, may get a misguided impression of events. Readers, however, generally understand what titles and headlines are and know that the underlying details of the relevant allegations can be readily and immediately found by reading the actual reporting being summarized.

That is not to say that every headline or link title, no matter how misleading, is entitled to the fair report privilege as long as the true facts are available in the underlying reported story. The particular alleged falsity or unfairness here, however—the omission of "allegedly" or "reportedly"—is the kind of simplification of the true facts, for purposes of being concise, that a reader would understand to reflect an incomplete summary of the readily available details of the underlying reporting. After all, everything in a news report is "reported" or "alleged," either by the reporter or someone else, and if one wants to know the details, he can simply read the story and decide for himself what he wishes to believe. The court, therefore, finds that NewsChannel 5's report was a substantially accurate account of statements made in an official proceeding and, therefore, is protected by the fair report privilege. His claims against NewsChannel 5 must be dismissed, and his motion is rendered moot.

## IV. CONCLUSION

For the foregoing reasons, NewsChannel 5's Motion to Dismiss (Doc. No. 97) will be granted, and Clayton's Motion for Extension of Time Under Rule 6(b) for Rule 4(m) Deadline (Doc. No. 105) will be denied as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge