IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARK CLAYTON,** | ) | No. 3:22-cv-00936 |
| Plaintiff, | ) | Judge Trauger |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WILLIAM YOUNG,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff's Memorandum Of Law In Support Of Summary Judgment**

## I. INTRODUCTION

This case exposes a conspiracy by three government officials to silence a citizen through orchestrated false accusations and unlawful force. The United States Supreme Court has long held that the misuse of governmental power "clothed with the authority of state law" constitutes unconstitutional state action. *United States v. Classic*, 313 U.S. 299, 326 (1941). When such misuse of power suppresses speech at a public meeting, it strikes at the very core of the First Amendment's protections.

## II. Summary Of Facts

On May 17, 2022, Plaintiff Mark Clayton called the Tennessee Registry of Election Finance to arrange to testify on behalf of Jonathan Hall, whom Plaintiff believed was being unfairly targeted as a potential witness in a criminal case. (SUF ¶2–3.) The only person who heard this call—Lauren Topping—swore under oath that the caller merely "threatened to sue if not permitted to speak." (SUF ¶18.)

Yet despite receiving no report of any actual threats, Defendants Tom Lawless, Paige Dennis, and William Young coordinated their response the night before the meeting. They arranged what Young himself later described as "unusual" security—a state trooper positioned specifically for Plaintiff. (SUF ¶13, ¶17.) They discussed the phone call in multiple conversations. (SUF ¶11, ¶14, ¶31.) They would later directly contradict prior admission about this coordination in their Motion for Summary Judgment, claiming Young "did not talk with Mr. Lawless or any other Registry member about the call or security prior to the meeting"—directly contradicted by Lawless's own recorded statement at the meeting captured on video: "Bill and I talked about it last night." (SUF ¶14–15.), already a prior admission under *Scott*.

The conspiracy culminated on May 18, 2022. At the public meeting, with media present and cameras recording, Defendant Dennis asked Plaintiff: "Were you the one that was threatening our office yesterday?" (SUF ¶33.) When Plaintiff began responding—"What was the nature of the threat, ma'am? You just made a criminal accusation"—all three Defendants simultaneously declared "That's it" and ordered a state trooper to physically remove him from the building. (SUF ¶26, ¶32, ¶35.) This synchronized response, occurring mid-sentence without consultation or discussion, was not spontaneous. It was choreographed, serving as both defamatory publication and unlawful seizure.

Dennis admitted she "doesn't work in the office" and could not support her accusation. (SUF ¶38.) Young testified that Topping never reported any threats—"Specifically, no. It was more his tone." (SUF ¶22.) Lawless admitted the real reason for the removal was not any threat but perceived "disrespect" to the chair. (SUF ¶30.)  Lawless stated that he wanted the trooper to take Mr. Clayton "out of the building" and later clarified that to "at least out of the room." (SUF ¶¶42–45)"..  News Channel 5 also reported that the trooper was ordered to take Mr. Clayton "out of the building" despite that statement not being recorded on video. (SUF ¶ 44).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), established the controlling framework: 1) A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. 2) A fact is "material" only if it might affect the outcome of the suit under governing law. *Id.*" 3) [T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position" is insufficient. *Id.* at 252.  4) Courts must consider the substantive evidentiary burden applicable at trial. *Id.* at 254.

These standards apply with particular force where, as here, the nonmovants' own testimony confirms the absence of any factual dispute on material elements. The Court must view all evidence in the light most favorable to the nonmoving party, but it may not accept factual assertions directly contradicted by sworn testimony or incontrovertible video evidence. *Anderson*, 477 U.S. at 248–52. A summary judgement ruling should "view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Williams v. Maurer*, 9 F. 4th 416, 430 (6th Cir. 2021), 9 F. 4th 416, 430 (6th Cir. 2021).

Summary judgment Defendants cannot create a genuine dispute by offering testimony inconsistent with their own recorded statements, especially where the contradiction goes directly to material issues such as coordination, knowledge of falsity, or retaliatory motive. *France v. Lucas*, 836 F.3d 612 (6th Cir. 2016).  This is precisely the kind of record *Adickes v. S.H. Kress & Co.* warns about at summary judgment: where evidence of state action and constitutional deprivation arises from the defendants' own admissions and circumstantial proof of coordination, it is improper to treat the case as if no genuine issue exists. *Adickes v. S.H. Kress & CO*, 398 U.S. 144, 157–58 (1970) (reversing summary judgment where the movant failed to

negate possible joint action under color of law).  Pursuant to *Scott v. Harris*, 550 U.S. 372, 380–81 (2007), the Court must credit that video evidence where it "blatantly contradict[s]" Defendants' narrative. *Id.* at 380. Courts reviewing summary judgment motions need not "close [their] eyes" to what the record plainly reveals. *Id* at 381.

Here, Defendants' own sworn testimony and the video record confirm both elements of § 1983—color of law and constitutional injury—leaving no triable issue on liability.  Because Defendants' version of events collapses under the weight of their own depositions, the official video recording, and the admitted contradictions in their Motion for Summary Judgment, no genuine issue of material fact exists on any claim. Summary judgment is therefore appropriate.

## III. ARGUMENT

### A. Defendants Are Not Entitled to Qualified Immunity

### 1. Governing Standard

Qualified immunity shields officials from liability unless their conduct violates clearly established constitutional rights of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts ask (1) whether the facts show a constitutional violation and (2) whether the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

A right is clearly established when precedent places the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Exact factual correspondence is unnecessary; officials are on notice where general principles apply with obvious clarity. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (per curiam).

4

Once Defendants invoke qualified immunity, Plaintiff bears the burden of showing both a constitutional violation and clearly established law. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). Plaintiff meets that burden here.

**2. This Case Turns on the Legal Consequences of Undisputed Conduct**

This case does not turn on disputed facts. The official meeting video and Defendants' own testimony establish what occurred, and where Defendants' narrative conflicts with the video, the video controls. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). The only question is whether Defendants' publicly recorded conduct—publicly accusing Plaintiff of "threatening" the office, silencing him mid-sentence, and ordering a trooper to remove him—violated clearly established constitutional rights. It did.

**3. The Violated Rights Were Clearly Established in May 2022**

**a. First Amendment Retaliation**

The right to be free from retaliation for protected speech has long been clearly established. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Thaddeus-X v. Blatter*, 175 F.3d 378, 386–87, 394 (6th Cir. 1999) (en banc). Qualified immunity does not apply to official retaliation against citizens for protected criticism. *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir. 1998). That protection extends to both Plaintiff's May 17 phone call and his speech at the May 18 meeting, which Defendants themselves linked to the removal. (SUF ¶¶11, 14, 26–27; Video 9:15–9:35.)

*Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997), forecloses qualified immunity for official recharacterization of protected criticism as criminal or threatening to justify adverse action. *Id*. at 264. That is exactly what occurred here.

**b. First Amendment Rights at Public Meetings**

Citizens enjoy First Amendment protection when speaking at public meetings. *City of Madison Joint Sch. Dist. No. 8 v. WERC*, 429 U.S. 167, 175–76 (1976). Viewpoint discrimination at public meetings is categorically forbidden. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46 (1983).

Qualified immunity does not apply where officials silence or punish citizens at public meetings for critical speech. *Leonard v. Robinson*, 477 F.3d 347, 351–53 (6th Cir. 2007). More recently, *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893–94 (6th Cir. 2021), reaffirmed that "giving offense is a viewpoint" and cannot justify removal.

Plaintiff was removed for stating, "You just made a criminal accusation"—a paradigmatic example of protected criticism. Lawless admitted the removal was based on perceived "disrespect." (SUF ¶30.) Disrespect toward public officials is protected speech, and silencing it is unconstitutional viewpoint discrimination under clearly established law.

**c. Procedural Due Process**

It has been clearly established since *Goss v. Lopez*, 419 U.S. 565, 579 (1975), that even brief deprivations of liberty require notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976).

Plaintiff received none. He was given no warning, no explanation, no opportunity to comply, and no chance to respond. He was cut off mid-sentence and immediately removed. This total absence of process violated clearly established due process rights.

**d. Fourth Amendment Seizure**

A seizure occurs when officials intentionally terminate a person's freedom of movement. *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989). Such a seizure must be supported by reasonable, articulable suspicion. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

Defendants ordered a state trooper to remove Plaintiff despite knowing he made no threats. (SUF ¶¶18, 21–24, 56.) This seizure violated clearly established Fourth Amendment law.

### e. Falsely Labeling Protected Speech as "Threatening"

Barrett is dispositive. There, the Sixth Circuit denied qualified immunity where a public official falsely accused a critic of criminal conduct despite knowing the accusation was unsupported. 130 F.3d at 263–64.

Here, Defendants' own staff attorney confirmed in real time that Plaintiff made "no direct threats of violence." (SUF ¶56.) Yet Defendants repeatedly accused Plaintiff of "threatening" the office and relied on that false characterization to justify his removal. Under *Barrett* and *Bloch*, no reasonable official could believe such conduct was lawful.

### f. Adverse Action Against an Ordinary Citizen

Ordinary citizens receive the strongest protection under the Sixth Circuit's retaliation framework. *Rudd v. City of Norton Shores*, 977 F.3d 503, 513–14 (6th Cir. 2020). Forcible removal from a public venue easily satisfies the adverse-action threshold. *Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir. 2022).

Plaintiff's removal by a uniformed trooper, following a public accusation of making "threats," plainly constitutes adverse action under clearly established law.

### 4. This Was Not a Split-Second Judgment

Qualified immunity's deference to split-second decisions under *Graham v. Connor*, 490 U.S. 386, 397 (1989), has no application here. Defendants discussed the call the night before, arranged "unusual" security, and acted in a synchronized manner. (SUF ¶¶11, 13–17, 27, 40.)

This was a planned response, not an emergency judgment. Officials who have time to coordinate cannot invoke the "rapidly evolving situation" rationale. *Hope*, 536 U.S. at 741.

**5. The Video Confirms Deliberate Retaliation**

The meeting video conclusively links Plaintiff's removal to his protected speech and contradicts Defendants' post-hoc explanations: 1) Dennis ties the removal to the prior-day call (Video 9:15–9:35) 2) Registry counsel confirms no threats occurred (SUF ¶56) 3) Defendants continue the false narrative after Plaintiff's removal (SUF ¶¶49, 55–57). Under *Scott v. Harris*, the Court must credit this record.

**6. Judicial Immunity Does Not Apply**

Defendants are not entitled to judicial or quasi-judicial immunity. Judicial immunity applies only when officials perform functions "functionally comparable" to those of judges acting in an adjudicative capacity. *Shelly v. Johnson*, 849 F.2d 228, 229–30 (6th Cir. 1988). None of the Defendants were acting as administrative law judges or performing adjudicative functions.

**7. Conclusion**

By May 2022, it was beyond debate that officials may not falsely label protected criticism as "threatening," silence a speaker mid-sentence, and order armed law enforcement to remove him from a public meeting without cause or process. The law was clearly established under *Barrett*, *Bloch*, *Leonard*, *Ison*, *Rudd*, and *Wood*.

Defendants are therefore not entitled to qualified immunity.

**C. Defendants Defamed Plaintiff and Conspired to Do So**

Tennessee defamation law requires proof that a defendant published a statement knowing it was false and defamatory, or with reckless disregard for the truth. *Brown v. Christian Brothers Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013). The gravamen of the tort is injury to character or reputation. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994). These principles apply with particular force where, as here, a government official publicly attributes criminal conduct to a citizen during an official proceeding.

Tennessee also recognizes defamation by implication, which occurs when words reasonably convey a false criminal meaning to a reasonable listener. *SmileDirectClub, Inc. v. NBCUniversal Media, LLC*, 708 S.W.3d 556, 577 (Tenn. Ct. App. 2024). Dennis's public accusation—"were you the one that was … threatening our office yesterday?"—squarely meets this standard. (SUF ¶33.)

**1. The Elements of Defamation Are Satisfied**

The facts establish defamation as a matter of law. Publication is indisputable: the accusation was made at a public governmental meeting with media present (SUF ¶1), recorded on the Registry's official video and transcript (SUF ¶26, ¶32, ¶39), and broadcast by NewsChannel 5 (SUF ¶46). Falsity is equally clear. The only witness to the call swore Plaintiff merely "threatened to sue" and made no other threats (SUF ¶18, ¶20); Young confirmed she reported no threats—"specifically, no; it was more his tone" (SUF ¶22); and Dennis admitted she was told of no threats and that no one said Plaintiff "threatened to sue" (SUF ¶21, ¶24, ¶50). Yet after Topping stated there were "no threats of violence," Dennis asserted, "We know he just threatened us and threatened to sue us." (SUF ¶49.) No Defendant can identify any threat beyond Plaintiff's post-ejection statement that he would sue, rendering Dennis's accusation a false implication of additional criminal conduct later disavowed in deposition.

Under *Brown v. Christian Brothers Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013), this record establishes at least reckless disregard for the truth—and, in fact, knowledge of falsity.

## 2. Defamation by Implication Applies Directly

Dennis's question—"Were you the one that was threatening our office yesterday?" (SUF ⁋33)—plainly implied that Plaintiff had made a threat against the Registry, and under *SmileDirectClub*, even literally true statements are defamatory if they convey a false implication. *SmileDirectClub, Inc.*, 708 S.W.3d at 577. There is no evidence Dennis was referring to anyone other than Plaintiff, and under oath she initially denied making the statement and only conceded—after being shown the video twice—that it was "a phrase of what I said," underscoring her lack of any factual basis for the implication. (SUF ⁋⁋51–53.)

The inquiry turns on what the statement reasonably conveyed, not Dennis's subjective intent. *SmileDirectClub*, 708 S.W.3d at 567–70. Given the setting, tone, and immediate escalation to police removal, a reasonable listener would understand the remark as accusing Plaintiff of threatening—if not criminal—conduct, an understanding confirmed by Plaintiff's immediate response ("You just made a criminal accusation"), which Dennis did not deny. (SUF ⁋34, ⁋39.)

Even if the implied "threat" were deemed non-criminal, the statement remains defamatory because Dennis admitted she had no knowledge of any threat at all: she acknowledged at the meeting that she did not know the "nature of the threat" because she did not "work at the office" (SUF ⁋26), and later testified that no one told her Plaintiff made any threat or threatened to sue during the prior call. (SUF ⁋⁋21–24, 54.)

## 3. The Statement Was False and Made with Actual Malice

Assuming arguendo Plaintiff is a public figure, he must prove actual malice—knowledge of falsity or reckless disregard for the truth—by clear and convincing evidence. *New York Times*

*Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *SmileDirectClub, Inc.*, 708 S.W.3d at 575 (citing *Charles v. McQueen*, 693 S.W.3d 262, 268 (Tenn. 2024)). Clear and convincing evidence exists where there is no serious or substantial doubt as to the conclusion. *Charles*, 693 S.W.3d at 281 (quoting *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 128 (Tenn. 2013)). Reckless disregard is shown by serious doubts as to the truth. *St. Amant v. Thompson*, 390 U.S. 727 (1968).

Dennis's accusation—"Were you the one that was threatening our office yesterday?"—was made with actual malice. When pressed, she admitted she "didn't work at the office" and lacked knowledge of any threat. (SUF ¶¶26, 38.) The only recipient of the call, Lauren Topping, stated there were "no direct threats of violence" (SUF ¶¶55–56); Young testified Topping reported no threats (SUF ¶¶22–23); and Dennis admitted no one told her Plaintiff made threats or threatened to sue. (SUF ¶¶21, 54.) Yet Dennis nevertheless asserted, "He just threatened us and threatened to sue us." (SUF ¶49.)

Dennis then attempted to deny making the accusation and conceded it only after being shown the video twice. (SUF ¶¶51–54.) This combination of admitted lack of knowledge, contemporaneous contradiction, escalation after correction, and evasive testimony establishes—by clear and convincing evidence—reckless disregard and thus actual malice. *St. Amant*, 390 U.S. 727.

**4. Publication and Damages**

The defamatory accusation was made at an official public meeting (SUF ¶1), captured on the Registry's official video (SUF ¶26, ¶32, ¶39), and republished by NewsChannel 5, which reported that Plaintiff was removed "after reportedly making threats," while Young's post-meeting statement that Defendants took the "unusual step" of arranging a trooper reinforced the false implication of dangerous criminality and caused injury to Plaintiff's character

and reputation. (SUF ¶17, ¶46; *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 820 (Tenn. 1994).)

**5. Conspiracy Is Established by Coordinated Conduct**

Tennessee civil conspiracy requires: (1) a common design, (2) joint actions, (3) overt acts, and (4) resulting injury. *Kincaid v. SouthTrust Bank*, 221 SW 3d 32, 38 (Tenn. COA 2006). The conspiracy need not be proven by explicit agreement; but can also be "established using circumstantial evidence and inferences drawn from the evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." *First Community Bank v. First Tenn. Bank*, 489 SW 3d 369, 396 (Tenn.2015). Every element is met.

**Common Design and Joint Action.**

Before the meeting, Young spoke with Dennis (SUF ¶11) and with Lawless about the call and security (SUF ¶14); all three discussed the May 17 call (SUF ¶31). Their sworn denial of any such coordination in their Motion for Summary Judgment (SUF ¶15) is contradicted by the meeting video and deposition testimony. They jointly arranged security (SUF ¶13, ¶17), adopted a "threat" narrative, and coordinated their response to Plaintiff's challenge.

**Overt Acts.**

Dennis publicly accused Plaintiff of "threatening" the office (SUF ¶33). As Plaintiff defended himself, all three Defendants simultaneously declared "That's it" (SUF ¶26–27, ¶35) and jointly ordered his removal (SUF ¶28–29, ¶40), with Dennis summoning the trooper (SUF ¶45). Although no instruction to remove Plaintiff from the building appears on the video, the trooper did so, and NewsChannel 5 reported that officials ordered Plaintiff removed "from the building." (SUF ¶44.) Lawless later testified that he wanted Plaintiff "out of the building—or at least out of the room." (SUF ¶40–43.)

**Reasonable Inferences.**

The only reasonable inference is that the trooper had been instructed before the meeting to remove Plaintiff entirely. Young admitted he was told of no threats during the May 17 call, yet allowed Dennis's false implication to stand and participated in the removal. (SUF ¶22–24.)

**Circumstantial Proof of Coordination.**

Topping's later affidavit—introducing for the first time a claim that Plaintiff "threatened to sue"—contradicts all three Defendants' sworn testimony that no such report was made and omits her contemporaneous call to Mr. Hall, during which she expressed no concern. These contradictions and omissions undermine the affidavit's credibility and support an inference of a post hoc effort to construct a unified justification.

**Resulting Injury.**

Defamation, reputational harm, false imprisonment, and loss of First Amendment rights flowed directly from this coordinated plan and were amplified by media publication. (SUF ¶46.) The conspiracy is not speculative—it is established by video, depositions, and Defendants' own contradictions.

**D. Defendants Falsely Imprisoned Plaintiff and Conspired to Do So**

Under Tennessee law, false imprisonment requires "(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *Brown v. Christian Brothers Univ.*, 428 S.W.3d 38, 54 (Tenn. Ct. App. 2013) (quoting *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990)). Detention may occur through constructive force where a person submits to reasonably apprehended official authority. *Newsom v. Thalhimer Bros., Inc.*, 901 S.W.2d 365, 367 (Tenn. Ct. App. 1994). A uniformed state trooper acting on commands from the dais constitutes constructive force as a matter of law; Plaintiff's compliance was compelled.

13

**1. Plaintiff Was Restrained Against His Will**

The video record shows coordinated restraint. Plaintiff was cut off mid-sentence (SUF ¶26–27, ¶32), declared "out of order" (SUF ¶40), and removed following joint commands. (SUF ¶28–29, ¶36.) Dennis summoned the trooper with the single word "Trooper." (SUF ¶45.) No instruction to remove Plaintiff from the building appears on the meeting video (SUF ¶43), yet the trooper immediately removed him from the entire building. (SUF ¶47.) NewsChannel 5 reported that officials instructed the trooper to remove Plaintiff "from the building." (SUF ¶44.)

Lawless later testified that he indicated Plaintiff "needed to leave" and that Defendants wanted him "out of the building…or at least out of the room." (SUF ¶42.) With no contemporaneous on-record instruction, the only reasonable inference is that the trooper was instructed before the meeting to effect a full-building removal. Plaintiff's affidavit confirms he was forced from the building and prevented from conducting unrelated business. (SUF ¶47.) This constitutes detention under *Brown*, *Coffee*, and *Newsom*.

**2. The Detention Was Unlawful**

Plaintiff committed no threat, disruption, or rule violation. The supposed justification—threats to the Registry—was fabricated and known to be false. The record establishes: 1) Topping reported only a threat to sue and no other threats (SUF ¶18, ¶20); 2) Young testified Topping reported no threats ("specifically, no") (SUF ¶22–23); 3) Dennis admitted Young never told her Plaintiff made threats (SUF ¶21, ¶24); and 4) Lawless testified Plaintiff's statement ("You just made a criminal accusation") was not concerning. (SUF ¶25.)

Plaintiff appeared to speak on an agenda item after arranging in advance to testify (SUF ¶1–3) and was responding to Dennis's question when removed. (SUF ¶34.) Defendants therefore knew no threat occurred, rendering the detention unlawful. *Brown*, 428 S.W.3d at 54.

Lawless admitted the real reason for removal was perceived "disrespect" and Plaintiff's "accusation." (SUF ⁋30, ⁋41.) But Plaintiff's statement was factually accurate and constitutionally protected. Tennessee law does not permit officials to deploy law enforcement to silence criticism or defend personal dignity. *Coffee*, 795 S.W.2d at 659; *Brown*, 428 S.W.3d at 54.

Defendants identified no Registry rule Plaintiff violated. He was removed mid-sentence, without warning or opportunity to comply, violating the First Amendment and procedural due process. *Wood v. Eubanks*, 25 F.4th 414, 428–29 (6th Cir. 2022). The seizure also fails narrow tailoring. *Ward v. Rock Against Racism*, 491 U.S. 781, 789 (1989). Less restrictive alternatives—directing Plaintiff to stop speaking or return to his seat—were obvious. Instead, Defendants orchestrated a full-building expulsion based on the content of Plaintiff's speech. (SUF ⁋42–45.)

### 3. Conspiracy

The same evidence establishing defamation conspiracy establishes conspiracy to falsely imprison. Before the meeting, Young spoke with Dennis (SUF ⁋11) and with Lawless (SUF ⁋14); all three discussed the call (SUF ⁋31), despite falsely denying this in their Motion for Summary Judgment (SUF ⁋14–15). They arranged "unusual" security via a trooper. (SUF ⁋13, ⁋17.) At the meeting, Dennis accused Plaintiff (SUF ⁋33); Plaintiff attempted to respond (SUF ⁋34); all three declared "That's it" (SUF ⁋26–27, ⁋35); Lawless ordered removal (SUF ⁋36, ⁋40); Dennis summoned the trooper (SUF ⁋29, ⁋45); and Plaintiff was removed. (SUF ⁋45.) Plaintiff suffered loss of liberty, reputational harm, humiliation on video, constitutional injury, and media amplification. (SUF ⁋46.)

### 4. Conclusion

Under *Brown*, *Coffee*, and *Newsom*, Defendants are liable for false imprisonment as a matter of law. Acting jointly and intentionally, they used state authority to seize and expel a citizen engaged in protected speech. The removal was a coordinated, unconstitutional detention—not a lawful exercise of government authority.

**E. Defendants Violated Plaintiff's First Amendment Rights Under 42 U.S.C. § 1983**

Section 1983 imposes liability on any person who, under color of state law, deprives another of constitutional rights. 42 U.S.C. § 1983. Officials act under color of law not only when performing lawful duties, but also when misusing authority conferred by the state. *United States v. Classic*, 313 U.S. 299, 326 (1941); *Monroe v. Pape*, 365 U.S. 167, 172–74 (1961). As the Supreme Court has explained, "[a] person acts under color of state law when he abuses the position given to him by the State." *Kalina v. Fletcher*, 522 U.S. 118, 123 (1997). Liability requires state action and a constitutional deprivation. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Both elements are covered  here: Defendants acted in their official capacities as members of a state board and used that authority to accuse Plaintiff of criminal conduct and eject him from a public meeting.

Defendants' conduct—publicly accusing Plaintiff of "threatening" the Registry, silencing him mid-sentence, and ordering a State Trooper to remove him—occurred entirely under color of their official authority and falls squarely within § 1983.

**1. First Amendment Retaliation**

The First Amendment forbids retaliation for protected speech. *Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir. 2022). Plaintiff engaged in core protected speech by addressing governmental fairness, attempting to testify on behalf of Jonathan Hall (SUF ¶2–3), and responding to a false

accusation of criminal conduct. (SUF ¶34, ¶37, ¶39.) His speech was neither threatening nor disruptive and occurred during the public-comment period. (SUF ¶1–3.)

Plaintiff then suffered an adverse action sufficient to chill speech as a matter of law: he was forcibly removed by a State Trooper at Defendants' direction. The sequence—Dennis's accusation (SUF ¶33), Plaintiff's attempt to respond (SUF ¶34), Defendants' synchronized "That's it" (SUF ¶26–27, ¶32, ¶35), Lawless's order to remove him (SUF ¶40), and Trooper intervention (SUF ¶45)—culminated in Plaintiff's removal and media portrayal as a man who made "threats." (SUF ¶46.)

Causation is direct and contemporaneous. Plaintiff was removed because of what he was saying while he was saying it. Lawless admitted Plaintiff was "out of order" because he was "making an accusation of some type." (SUF ¶26, ¶40–41.) That admission establishes retaliatory motive as a matter of law. "Disrespect" toward public officials is protected speech, and retaliation based on displeasure with tone or content is unconstitutional.

### 2. Procedural Due Process

Procedural due process requires notice and an opportunity to comply before deprivation of a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Plaintiff had a liberty interest in attending and participating in a public meeting, speaking during public comment, defending himself against a false criminal accusation (SUF ¶34), and not being physically seized without cause.

Defendants deprived Plaintiff of these interests without warning, without identifying any violated rule, and without an opportunity to comply. Plaintiff was cut off mid-sentence and removed based on a fabricated justification of "threatening" conduct that Defendants knew did not exist. (SUF ¶18, ¶21–24, ¶55–56.) He was also prevented from completing unrelated business in the

building. (SUF ¶47.) This complete absence of process, coupled with a pre-arranged removal, constitutes an arbitrary deprivation forbidden by the Fourteenth Amendment and mirrors the retaliatory removal condemned in *Wood*.

### 3. Color of Law

The color-of-law requirement is easily satisfied. Officials act under color of law when they misuse authority "possessed by virtue of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Classic*, 313 U.S. at 326). Even unlawful acts qualify if accomplished through state authority. *Monroe*, 365 U.S. at 172–74; *Kalina*, 522 U.S. at 123–24.

Defendants acted from the official dais of a state board, during an official meeting, declared Plaintiff "out of order," and invoked their authority to direct a uniformed Tennessee Highway Patrol Trooper to remove him. No private citizen could do so. Because Defendants' conduct was made possible only by their state-conferred authority, they acted under color of law as a matter of law. *West*, 487 U.S. at 49.

### 4. Conclusion

Acting under color of state law, Defendants retaliated against Plaintiff's protected speech (*Wood*), deprived him of liberty through an unlawful seizure (*Brown*, *Coffee*, *Newsom*), and denied him basic procedural due process (*Mathews*, *Goss*), while misusing official authority to silence criticism (*Classic*, *Monroe*, *Kalina*). This coordinated abuse of state power to suppress protected expression and physically remove a citizen from a public meeting violates the First and Fourteenth Amendments. Liability under § 1983 is therefore established as a matter of law.

### F. Defendants Violated the Tennessee Open Meetings Act

Plaintiff's Tennessee Open Meetings Act ("TOMA") claim, Tenn. Code Ann. § 8-44-101 et seq., is properly before the Court. The Court granted leave to add the claim, and it is pleaded in the operative Third Amended Complaint. (ECF 133.) Defendants argue the claim fails because citizens have no right to "participate" in public meetings (ECF 130 at 5), but that misstates the claim. Plaintiff does not assert a right to speak; he asserts a right to attend.

The video record shows Plaintiff was physically removed from the May 18, 2022 public meeting while the Board continued deliberations and then voted on the Jonathan Hall matter. (SUF ¶¶1, 28, 48.) TOMA prohibits a governmental body from conducting business after excluding a citizen from a public meeting without lawful justification. Tenn. Code Ann. § 8-44-105. TOMA is enforced strictly, and no showing of bad faith is required. *Allen v. City of Memphis*, 397 S.W.3d 572, 588 (Tenn. Ct. App. 2012). Thus, even if Defendants believed removal was justified, the post-exclusion vote is void.

Defendants' reliance on *Whittemore v. Brentwood Planning Comm'n* is misplaced. Whittemore holds that TOMA does not guarantee participation, but it expressly distinguishes participation from attendance. 835 S.W.2d 11, 18 (Tenn. Ct. App. 1992). Plaintiff was not denied speaking time; he was physically excluded. The record shows Plaintiff rose only when the agenda item he attended for was called. (Def. SUF, Doc. 140 at 5 ¶19.) Defendants could have directed him to sit or stop speaking, but instead removed him from the room and ultimately the building. (SUF ¶42.) Removal from a public meeting implicates the statutory right to attend and observe governmental decision-making. *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021).

Standing is satisfied. TOMA authorizes enforcement by "any citizen," and a threshold showing of a violation confers standing. *Fannon v. City of Lafollette*, 329 S.W.3d 418, 429 (Tenn. 2010). Plaintiff, a citizen physically excluded while public business was conducted, plainly qualifies.

Defendants' assertion that no action was taken after Plaintiff's removal is contradicted by the record. Immediately after his exclusion, the Board deliberated and voted to deny reconsideration of the $360,000 fine against Jonathan Hall. (SUF ¶48.) Section 8-44-105 declares such action void when taken after unlawful exclusion.

The Third Amended Complaint alleges—and the facts confirm—that Plaintiff lawfully attended the meeting, was forcibly removed without legal justification, and was excluded while the Board deliberated and voted. Under Tenn. Code Ann. § 8-44-105, the resulting action is void. The video record, transcript, and Defendants' own filings leave no genuine dispute.

**Conclusion**

The record presents no genuine dispute of material fact. Defendants' own testimony, the official meeting video, sworn affidavits, contemporaneous statements, and contradictions in Defendants' Motion for Summary Judgment establish liability on every claim. Summary judgment is appropriate where the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986).

Defendants admit the dispositive facts: Plaintiff made no threats (SUF ¶18, ¶20–24); Defendants coordinated before the meeting despite denying it in their filings (SUF ¶11, ¶14–16, ¶31); Plaintiff was removed for perceived "disrespect," not disruption or threat (SUF ¶30, ¶41); and Dennis lacked any factual basis for her accusation. (SUF ¶37–38.) The video confirms the synchronized "That's it" (SUF ¶26–27, ¶32, ¶35), the false implication of a threat (SUF ¶33), Plaintiff being cut off mid-sentence (SUF ¶34, ¶39), the summoning of a State Trooper (SUF ¶40, ¶45), and the resulting media publication. (SUF ¶46.)

Under Tennessee law, these acts constitute defamation, defamation by implication, false imprisonment, civil conspiracy, and violations of the Tennessee Open Meetings Act, Tenn. Code

Ann. § 8-44-101 et seq. Under federal law, they constitute First Amendment retaliation, unlawful seizure, procedural due-process violations, and action under color of state law, each actionable under 42 U.S.C. § 1983. The elements are satisfied by Defendants' admissions and the record: falsity and actual malice (*Brown*; *SmileDirectClub*); unlawful restraint (*Coffee*; *Newsom*); retaliation (*Wood*); denial of due process (*Mathews*; *Goss*); and color-of-law action (*Classic*; *Monroe*; *Kalina*; *West*).

The law does not permit officials to make unfounded criminal accusations, suppress protected criticism, deploy law enforcement to remove citizens from public meetings without justification, or validate actions taken in violation of TOMA. Because the record shows Defendants acted jointly, knowingly, and under color of state law—and because their factual assertions are contradicted by video and sworn testimony—no reasonable jury could find in their favor. Fed. R. Civ. P. 56(c).

Plaintiff respectfully requests that the Court grant summary judgment on all claims; declare Defendants' actions unlawful; void actions taken after Plaintiff's exclusion pursuant to Tenn. Code Ann. § 8-44-105; issue appropriate injunctive relief; award compensatory and punitive damages; award attorney's fees and costs under 42 U.S.C. § 1988; and grant such further relief as necessary to vindicate Plaintiff's constitutional rights and protect the integrity of public proceedings.

Respectfully Submitted,

/s John M. Drake
John M. Drake (BPR 03502)
Law Office of John M. Drake
9851 Bear Creek Road
Sterrett, AL 35147
jmdrakelaw@gmail.com

Drew Justice #29247
Attorney for Mark Clayton
1902 Cypress Drive Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 28, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system to and to any parties not on CM/ECF through post:

s/ John M. Drake

John M. Drake

| | |
|---|---|
| Zachary L. Barker<br>Tennessee Attorney General's Office<br>P O Box 20207<br>Nashville, TN 37202-0207<br>(615) 532-4098<br>Zachary.Barker@ag.tn.gov | Matthew Floyd Jones<br>Office of Attorney General and Reporter<br>P.O. Box 20207<br>315 Deaderick Street<br>UBS Tower, 20th Floor<br>Nashville, TN 37243<br>(615) 532-5817 |
| Michael R. Dohn<br>Metropolitan Legal Department<br>P O Box 196300<br>Nashville, TN 37219<br>(615) 862-6341<br>michael.dohn@nashville.gov | Mary Elizabeth McCullohs<br>Tennessee Attorney General's Office<br>P O Box 20207<br>Nashville, TN 37202-0207<br>(615) 741-8126<br>mary.mccullohs@ag.tn.gov |
| Eric William Donica<br>Tennessee Attorney General's Office | Melissa S. Roberge<br>Metropolitan Legal Department<br>P O Box 196300<br>Nashville, TN 37219 |

P O Box 20207
Nashville, TN 37202-0207
615-741-7226
eric.donica@ag.tn.gov

Andrew Grahams
P. O. Box 20207, Nashville, Tennessee
37202
p. 615-741-2935
Email: Andrew.Grams@ag.tn.gov

(615) 862-6341
melissa.roberge@nashville.gov

William J. Harbison II
1201 Demonbreun Street Suite
1000
Nashville, TN 37203
615.244.1713
jharbison@nealharwell.com