# Affidavit of Mark Clayton

I, Mark Clayton, the undersigned affiant, hereby swear under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief:

Because the defamation comes from the Members of a governing body for a State, Tennessee, an equivalent counter-balance greater than what is required to repair defamation which originates from a private entity. After careful industry analysis, I have found that only Edelman, the global leader in reputation management, is capable of even beginning to take on the massive, global expense to repair the reputational harm done in this case. Not only the scope and severity of the defamation and false light claims but also the source, Members of a governing body during an official proceeding for the State of Tennessee, require a firm with unparalleled expertise, resources, and credibility to address such a high-stakes situation. The defamation originated from a major governing body during its official proceeding as a policy of the State of Tennessee, lending it an air of authority that significantly amplifies the harm and entrenches the accusations as credible in the eyes of the public. This institutional source of the false claims significantly raises the stakes, as it ensures the defamatory narrative will be deeply entrenched and widely believed without a comprehensive, multi-layered strategy to combat it. A simplistic approach, such as basic content suppression or isolated media corrections, would fail to address the systemic nature of the damage, the global reach of the accusations, and the need for ongoing reputation maintenance. Only a firm with Edelman's global reach, advanced digital capabilities, and proven ability to navigate complex, high-profile crises can effectively dismantle the false narrative and rebuild Clayton's reputation and legacy.

After additional analysis, the numbers on the initial disclosure are significantly underestimated. Further compounding the matter I, Mark Clayton, have returned to a private lifestyle for a long time and have not been significantly in the public eye for many years and lack any significant type of a platform from which to defend myself. Just because in the past I, Mark Clayton, have engaged in earned-media campaigns and communications in the past is meaningless here, because that took years and countless hours to build up. There is no possible way for me to personally go out and make a statement or series of actions of any kind which would counterbalance the permanent and lifelong harms done to my reputation in this matter. Compounding this matter is that it makes people only generally familiar with the criminal case of State v. Clayton, a case with similar allegations, misunderstand my innocence that I won that case, just as I am innocent of any type of false claims of "threats" now – people will all think that I have been convicted of a crime. I even walked into a court case on Friday, January 24, 2025 and the judge referred to my "conviction" when I have no conviction of any crime. So this has not merely affected me in all of society, the defamation and false light has caused other governmental entities to begin treating me as a criminal, which I would argue was the desired effect of the conspirators.

The Defendants knowingly used their gravitas and public pulpit not only to broadcast claims of criminal activity but also to create a pretext for public humiliation through an official removal ordered by the chair, Defendant Dennis, and motioned for by Defendant Lawless.

1

## Reputational Cost Analysis and Strategy by Edelman

The harm to my reputation caused by the false accusations of criminal activity made at the May 18, 2022 Meeting, amplified by global media coverage, has created a lasting narrative that unjustly defines my character. Every individual who searches for my name encounters these defamatory claims, which have effectively overshadowed the truth. This ongoing damage not only affects my current standing but threatens my ability to leave a legacy untarnished by falsehoods. Addressing such pervasive harm requires a comprehensive, multi-phase strategy.

Edelman, the world leader in reputation management, has outlined a strategy to repair this damage, restore public trust, and ensure my reputation reflects the truth of my innocence for the remainder of my life and beyond. This effort is not a mere cosmetic fix but a transformative initiative to combat the permanence of the false narrative. The strategy includes:

1. **Immediate Reputational Restoration**:
    - Launching a **global media campaign** to correct false claims, secure public retractions, and widely disseminate evidence of my innocence.
    - Utilizing **SEO and digital suppression** techniques to reduce the visibility of defamatory content while promoting accurate and positive narratives.
    - Producing a professional **documentary or public statement** that reaches a global audience, laying out the facts and restoring my credibility.
2. **Long-Term Reputation Building**:
    - Creating ongoing **positive content**, such as interviews, articles, and multimedia features, to showcase my integrity, achievements, and contributions.
    - Initiating **philanthropic projects** that not only demonstrate my values but also contribute to society in meaningful ways.
    - Employing **social media rebranding** and securing **speaking engagements** to rebuild my image as a trusted and inspiring figure.
3. **Legacy and Posthumous Protection**:
    - Preserving my story through **digital archives** and ensuring that my innocence and achievements remain accessible for future generations.
    - Establishing a **memorial campaign** with pre-planned obituaries and biographies in high-authority outlets to cement my legacy as someone who overcame false accusations.
    - Maintaining **active monitoring** to guard against any resurgence of the false narrative.

Edelman's approach ensures that my reputation will not be dictated by these false accusations but will instead reflect the truth of my character and contributions. This is a deliberate and sustained effort to not only clear my name but also to leave behind a legacy that is untainted and authentic.

**Cost Breakdown**

- **Immediate Reputational Restoration**: $2,000,000
- **Long-Term Reputation Building**: $6,000,000
- **Legacy and Posthumous Protection**: $4,000,000
- **Ongoing Monitoring and Updates**: $1,000,000 (over 10 years)
- **Damages for Defamation and False Light are Taxable**: $4,810,000
  Total Estimate: $17,810,000

This multi-phase, lifelong strategy ensures my reputation is permanently restored and my legacy protected from the false accusations that have overshadowed the truth.

## Loss of Income

A forensic audit by professional expert economic witness Barbara Luna in a previous case found my income to be:

2016 -- $42,700

2017 -- $109,200

2018 -- $84,800

I had been working on mitigating damages from another civil case at that time as well as from defeating the State in State v. Clayton and am working with the Special Compliance Division at the Internal Revenue Service. I may have tax returns available through 2020. The events of this case devastated my financial life.

In 2016, someone had destroyed my property and put me out of business causing me to have to move from an automotive business to an sales business. There is a period from approximately 2016-2019 where I was mitigating damages from this cause of action. The next cause of action which I was mitigating was the malicious prosecution (I realize that the Court has currently dismissed the malicious prosecution but expect it to be revived either upon a Rule 54 motion or on appeal, *see Thompson v. Clark* – I flat out won my criminal case and there is no probable cause element), so this period lasted from approximately 2019-2022, and the current mitigation cycle from the cause of action caused by Defendants Lawless, Dennis, and Young is from approximately 2022 to the present 2025.

I am forced to work for myself as a salesman, because I am not marketable. The reason that I am not marketable is because nobody significant will hire or work with someone who has the Tennessee Bureau of Campaign Ethics and Finance stating on public record that I was removed because the Board found that I had made "threats." Nobody reads the article and researches to find that there are actually no "threats" anywhere, and there is a chilling effect. I am un-hirable because of the actions of Defendants Dennis, Young, and Lawless. And it is clear that it was their intent for the public to see me in this light and they succeeded. People are afraid to be associated with me, and the finding of fact by the chair and the Board from an official body,

albeit under color of law and baseless, has caused me to be ostracized from not just employment but society in general.

At the time of the Meeting on May 18, 2022, I had finally cleared my name of false criminal charges and was trying to get back to normal work. I work in sales for myself now and had potential revenue and earning potential according to the Barbara Luna report of $356, 203 per year. This is a highly conservative estimate. Working for myself part time I could make about $170,000 in a bad year (keeping in mind that I have no other options due to the reputational damage). <u>My actual potential on my own in about $1,200,000 if state actors acting under color of law would have left me alone and followed the laws.</u>

In early disclosure we stated approximate earning loss of $170,000. This is far too low actually.

A forensic audit from a previous case's expert witness from prior years indicated an approximate annual earning capacity conservative estimate of $356,203 per year.

This reason that the above estimates are highly conservative is because the potential for me to earn much more is much higher so long as I am left alone from the abuse of the disqualified *Nashville/Davidson County District Attorney and **Defendant's Young, Dennis, and Lawless My actual good-faith estimate earning potential working independently is approximately $1,200,000 per year.

*The Nashville/Davidson County District agreed to be disqualified

**notwithstanding that I am working for myself due to having no other prospects because of the defamation/false light issue discussed herein

## Witness Interference

1. On May 18, 2022, I testified before the Tennessee Board of Ethics and Campaign Finance (the "Board") during its official meeting (the "Meeting").
2. During my testimony, I stated the following regarding **witness interference**:
    - **(a)** I had recently defeated criminal charges in the case of *State v. Clayton*, brought against me by the Nashville/Davidson County District Attorney's Office, where Jonathan Hall was a key witness on my behalf.
    - **(b)** I stated that the referral of Jonathan Hall to the Board was a retaliatory action designed to punish both myself and Mr. Hall. Specifically, this referral was intended to interfere with Mr. Hall as a witness and intimidate any other potential witnesses in support of my case.
    - **(c)** I testified that the two Nashville/Davidson County District Attorneys present at the Meeting were from the same office that had been disqualified from prosecuting me in *State v. Clayton*. In that case, I had filed a motion to disqualify the entire Nashville/Davidson County District Attorney's Office, and the office agreed to its disqualification before the case's dismissal.
    - **(d)** Due to the disqualification of the Nashville/Davidson County District Attorney's Office in *State v. Clayton*, I argued that they should not have been

4

allowed to participate in the referral or testimony against Jonathan Hall for campaign finance fines. Such participation was a retaliatory action aimed at punishing Mr. Hall for serving as a witness on my behalf; and to serve as a chilling effect against other actual and potential witnesses.

## Evidence of Conspiracy Among the Defendants

3. The evidence of conspiracy among the Defendants relies on:
    - My personal experience at the Meeting;
    - News reports covering the Meeting;
    - The recently obtained official video recording of the Meeting, which provides critical new evidence.
    - Also have a video from News 5 superimposed over the Meeting video to show what Mark Clayton really said when the New 5 broadcasters talked over Mark Clayton
    - Also intend to subpoena News 5 to get their video which will show the part that cannot be heard because the Board Members at the Meeting had the microphone turned down for my, Mark Clayton, time to speak.
4. Upon review of the video recording, it is clear that the Defendants engaged in a **meeting of the minds** to conspire against me, as detailed below:
    - **(a)** The video shows extensive discussion among the Defendants, including Board Members, employees of the Board, and representatives from the Nashville/Davidson County District Attorney's Office, about their pretextual and unlawful actions against me.
    - **(b)** The Nashville/Davidson County District Attorney's Office provided testimony during the Meeting about *State v. Clayton* and my motives, which was used as part of the conspiracy to falsely claim I made criminal threats prior to the Meeting. These false claims were then used as justification for my removal from the Meeting.
    - **(c)** The video shows that I was removed (false imprisonment) from the Meeting before completing my testimony in defense of Jonathan Hall. This removal was based on new false accusations of criminal threats, which I had already defeated in equivalence in *State v. Clayton*.
    - **(d)** The Nashville/Davidson County District Attorney present failed to address my statements regarding their office's disqualification in *State v. Clayton* and instead contributed to the narrative that I had made criminal threats by testifying and answering Board questions regarding motive.

## Intentional Suppression of My Testimony

5. The video also demonstrates deliberate actions by the Defendants to suppress my testimony:
    - **(e)** The Defendants intentionally turned down my microphone during the Meeting, making it difficult for the public to hear my testimony.

5

- (f) Conversely, the Board immediately after physically amplified the microphone for the Nashville/Davidson County District Attorney, ensuring that his statements could be clearly heard and recorded.
- (g) The Defendants conspired to ensure that the public could not fully hear or understand my defense of Jonathan Hall. This suppression of my testimony was part of their broader conspiracy to silence me and intimidate witnesses.

## Conspiracy Recorded on Video

6. The Board's official video recording of the Meeting captures, in full detail:
   - The Defendants' discussions of their conspiracy;
   - Their pretextual and unlawful justifications for my removal;
   - Their coordinated actions to suppress my testimony and defame me through false accusations of criminal activity.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed this 28th day of January, 2025.**

**Mark Clayton**

*[signature]*

**Affiant**

Sworn to and subscribed before me, a Notary Public in and for the jurisdiction of _Overton_, this 28th day of January, 2025, by Mark Clayton, who is personally known to me or has produced _DRIVER LICENSE_ as identification.

**Witness my hand and official seal.**

**Notary Public Signature**

Printed Name: _Duel R Johnson_

Commission Number: _[signature]_

My Commission Expires: _10/29/2028_

*[Notary seal: DUEL R JOHNSON, STATE OF TENNESSEE NOTARY PUBLIC, OVERTON COUNTY]*

6