IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARK CLAYTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-00936 |
| ) | Judge Aleta A. Trauger |
| WILLIAM YOUNG, TOM LAWLESS, ) | |
| and PAIGE DENNIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM and ORDER

Now before the court are the plaintiff's Motion for Revision and Clarification under Fed. R. Civ. P. 54(b) ("Rule 54 motion") (Doc. No. 178) and Motion for Sanctions Pursuant to Rule 11 ("Rule 11 motion") (Doc. No. 180). Each motion was filed with a supporting Memorandum of law (Doc. Nos. 179, 181.) The defendants filed a Response in opposition to the Rule 54 motion (Doc. No. 190) by the deadline set by the court, and the plaintiff filed a Reply (Doc. No. 191). The time for responding to the Rule 11 motion has not yet expired.[1] For the reasons set forth herein, both motions will be denied.

I.     RULE 11 MOTION

    A.     Legal Standards

Rule 11 provides, in relevant part, that an attorney presenting a pleading or motion to the court certifies, in doing so, that:

---

[1] The plaintiff's motions were filed on Saturday, January 3, 2026. The court directed the defendants to respond to the Rule 54 motion by Monday, January 12, 2026, which they did. The response to the Rule 11 motion would not be due until Tuesday, January 20, 2026, since Monday, January 19, 2026 is a federal holiday.

to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) [the pleading, written motion, or other paper] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(1)–(3).

The rule also states that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The rule's use of "may" indicates that "sanctions are discretionary." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009) (citing Fed. R. Civ. P. 11(c)(1)). "[A]ny sanctions imposed 'must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.'" *Id.* (quoting Fed. R. Civ. P. 11(c)(4)).

In the Sixth Circuit, "the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990)). "[A]n attorney's good faith is not a defense." *Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1229 (6th Cir. 1989). Moreover, the Sixth Circuit recognizes that Rule 11 imposes "an implied 'duty of candor,' which attorneys violate whenever they misrepresent the evidence supporting their claims." *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir. 2023) (quoting *Rentz*, 556 F.3d at 395). A

court therefore "may sanction attorneys under Rule 11(b)(3) for factual assertions they know—or after reasonable investigation should have known—are false or wholly unsupported." *Id.*

**B.  Discussion**[2]

The plaintiff asserts that counsel for the Registry defendants violated Rule 11 by "asserting as fact that . . . Mr. Young 'did not talk with Mr. Lawless or any other Registry member about the call or security prior to the meeting.'" (Doc. No. 181 at 2 (quoting, without a citation, the defendant's Statement of Undisputed Material Fact No. 13, Doc. No. 140).) The plaintiff now states that this representation is "directly contradicted by the video record[ing] of the May 18, 2023 [sic] [Registry] meeting where Mr. Lawless clearly says 'Bill and I talked about it last night.'" (*Id.* (apparently referring to, but without citing, the video recording of the May 18, 2022 Registry meeting).)[3] The plaintiff asserts that "[t]his conduct misleads the Court and burdens the Plaintiff with the task of correcting the record," thus warranting sanctions under Rule 11(c). (*Id.*)

Although the Video was equally available to the plaintiff at the time, the plaintiff's Response to the defendants' Statement of Undisputed Material Fact No. 13 focused on the plaintiff's contention that the statement was "a direct self-contradiction by the Defendants," insofar as Young admitted calling Paige Burcham-Dennis to inform her about the call and to tell her that he had called for security to be present at the meeting. The plaintiff's argument in that regard was patently without merit, as it was clear from context that the defendants were saying that Young did

---

[2] This discussion presumes familiarity with the underlying facts and proceedings as laid out in the court's Memorandum addressing the defendant's Motion for Summary Judgment. (See Doc. No. 173.)

[3] The video, "Meeting Video Part 1," is available online at https://www.tn.gov/tref/calendar/2022/5/18/registry-of-election-finance-board-meeting.html (referred to hereinafter as "Video").) It was also manually filed as an exhibit to the defendants' summary judgment motion. (Doc. No. 144.) The Video shows that Lawless stated, after Clayton's removal from the meeting, "Bill and I talked about it last night at Inn of Court, so. At least he alerted me to it." (Video 15:04–10.)

not speak with any of the Registry members about the call *other than* Burcham-Dennis—as was made clear in Bill Young's Affidavit, in which he states that he "notified Chairwoman Burcham-Dennis" about the call and his request for security and that he "did not talk with any other Registry member about Mr. Clayton or the situation prior to the meeting *other than Ms. Burcham-Dennis* as described above." (Doc. No. 139-3 ¶¶ 7–8 (emphasis added).)

In depositions taken after the plaintiff responded to the Motion for Summary Judgment but well before the court ruled on it, Young testified that he did not recall talking about the situation with Lawless prior to the meeting. (Doc. No. 169-1, Young Dep. 9 ("Q. . . . Did you have a conversation with Tom Lawless? A. Not that I recall.").) When counsel played for him the portion of the Video in which Lawless said, "Bill and I talked about it last night," Young stated that the Video did not change his answer. (*Id.* at 10.) Young instead reconfirmed that he did not "recall having that conversation. Maybe I did. Tom [Lawless] and I were in the Inns of Court at that time, but I certainly – I just don't recall it." (*Id.*) Lawless stated in his Answer to the plaintiff's Interrogatory No. 10 that, "[t]o the best of [his] recollections, he had no discussions with anyone about [Clayton] before the Registry meeting." (Doc. No.139-4 at 10.) Lawless likewise testified that he and Young were both members of the Inns of Court and would likely have seen each other at a meeting, but he had no recollection of their talking about Clayton (or "the situation") prior to the meeting. (Doc. No. 169-2, Lawless Dep. 16.) He also testified that he would recall if Young had told him that he anticipated problems. (*Id.* at 17.)

The court, when ruling on the defendant's Motion for Summary Judgment, reviewed the Video of the May 19, 2022 Registry meeting *numerous* times and was aware of Lawless's statement that he and Young had "talked" the night before at an Inns of Court meeting. The court did not find this statement to be material, specifically noting that, "[e]ven assuming that Young

told Lawless as well as Burcham-Dennis about the plaintiff's telephone call, only rank speculation supports the plaintiff's belief that the defendants reached a plan ahead of the meeting to prevent [Clayton] from speaking and to eject him from the meeting based on that call." (Doc. No. 173 at 17.)

Both parties had access to the Video at the time the defendants filed their Motion for Summary Judgment and supporting documents, as it was posted online, was made publicly available shortly after the meeting, and was filed by the defendants with their motion. Both parties apparently watched the Video to prepare their summary judgment filings—but without initially remarking Lawless's statement that he and Young had "talked." The statement was brief and quick. The court observes that defense counsel likely should have noticed it sooner, but the court cannot find it so unreasonable to have overlooked the statement as to warrant sanctions—particularly given that plaintiff's counsel apparently overlooked the statement initially as well. Defense counsel's statement of fact that Young had not talked to any Registry member other than Paige Burcham-Dennis was reasonably based on the recollections of both Young and Lawless. And finally, the court finds that the plaintiff was not prejudiced by defense counsel's purported misconduct, that there was no attempt to hide the ball (to the contrary, the Video was filed by the defendants), and that the alleged misstatement was simply not material to the court's ruling on the Motion for Summary Judgment. That is, contrary to the plaintiff's representation, the defendants' statement did not mislead the court and would not have required the plaintiff to correct the record.

While defense counsel likely should have paid closer attention to the Video and should have pointed out the discrepancy between Lawless's statement on the Video and their clients' recollections, the court, in the exercise of its discretion, finds that sanctions are not warranted.

## II. RULE 54 MOTION

### A. Legal Standards

The Federal Rules of Civil Procedure do not provide expressly for reconsideration of summary judgment rulings, but Rule 54 states that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). And it has long been recognized that courts have "inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citing *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47–48 (1943)). Accordingly, "district court[s] may modify, or even rescind, such interlocutory orders" for sufficient cause. *Id.* (citing *Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88 (1922)); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952–53 (6th Cir. 2004) ("District courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment." (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983), as stating that "every order short of a final decree is subject to reopening at the discretion of the district judge").

Whether motions are made under Rule 54 or Rule 59, which does expressly authorize modification of a final judgment, courts typically "will find justification for reconsidering interlocutory orders whe[re] there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez*, 89 F. App'x at 959). This standard "vests significant discretion in the district court." *Rodriguez*, 89 F. App'x at 959 n.7.

In the Rule 59 context, at least, the Sixth Circuit and the Supreme Court have recognized that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008)). District courts typically apply this standard to motions under Rule 54 as well. *Accord, e.g.*, *Powers v. AutoZoners, LLC*, No. 3:23-CV-00609-RGJ, 2025 WL 2235414, at *2 (W.D. Ky. Aug. 5, 2025) ("As with Rule 59(e), reconsideration under Rule 54(b) may not be employed to relitigate issues or present evidence that could have been introduced earlier." (citing *Johnson v. United States*, No. 3:15-CV-715-DJH-CHL, 2019 WL 236720, at *2 (W.D. Ky. Jan. 16, 2019); *Saunders, v. Ford Motor Co.*, No. 3:14-CV-00594-JHM, 2015 WL 13547825, at *2 (W.D. Ky. Aug. 4, 2015)); *see also Weaver v. Christiansen*, No. 1:19-CV-127, 2020 WL 13750906, at *1 (W.D. Mich. Apr. 13, 2020) (citing *Fleet Eng'rs v. Mudguard Techs., LLC*, No. 1:12-CV-1143, 2013 WL 12085183, at *1 (W.D. Mich. Dec. 31, 2013)).

"The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." *Adkins v. Kroger Ltd. P'ship*, No. 5:18-156, 2018 WL 6613786, at *3 (E.D. Ky. Dec. 18, 2018) (citation omitted).

**B. Discussion**

In the introductory paragraphs of the Memorandum in support of his Rule 54 motion, the plaintiff makes a number of assertions that the court finds to be without merit, including that (1) discovery delays by the defendants hindered his ability to respond to the Motion for Summary Judgment; (2) the court prematurely granted the defendants' Motion to Strike the plaintiff's late-filed Motion for Summary Judgment, without giving the plaintiff an opportunity to respond; (3) the court, at a discovery dispute hearing, authorized the parties to seek additional briefing once depositions were complete and the plaintiff "intended to do so immediately after filing his

summary judgment motion" but, "while Plaintiff pursing Rule 16 relief, the Court ruled on Defendants' Motion for Summary Judgment the very next day—despite stating it would rule 'in a few days'" (Doc. No. 179 at 3); and (4) the court ruled without considering "the full record it authorized." (*Id.*)

The court has already determined that the plaintiff had ample opportunity to request additional briefing but failed to do so in a timely manner. And the record was sufficiently complete to permit the court to rule on the defendants' Motion for Summary Judgment. Further, the court is baffled by the plaintiff's statement that the court "ruled on Defendant's Motion for Summary Judgment the very next day." In fact, the defendants' Motion for Summary Judgment was filed in June 2025, and the plaintiff responded—after requesting and receiving an extension of the deadline—in August 2025; the court issued the Order authorizing the parties to seek additional briefing following the defendants' depositions on September 9, 2025 (Doc. No. 162), after a discovery dispute telephone conference with the parties on September 8, 2025; the defendants' depositions were taken on October 3, 2025; and the court did not rule on the defendants' Motion for Summary Judgment until December 23, 2025, more than two months after the depositions. Trial is set for January 27, 2026, but the plaintiff did not file his Motion for Summary Judgment until December 15, 2025, three and one-half months after the deadline for filing dispositive motions expired (*see* Doc. No. 123 at 4) and, again, more than two months after depositions were completed and without seeking, in advance, to reopen the deadline. There was no clear error of law.

The plaintiff maintains that striking his Motion for Partial Summary Judgment without permitting him to file a response constitutes manifest injustice. (Doc. No. 191 at 1–2.) It does not constitute manifest injustice, because the plaintiff was not prejudiced by the striking of his Motion

for Summary Judgment. The plaintiff's motion was rendered largely moot by the partial grant of the defendants' motion, and, even if the court had not granted summary judgment for the defendants on many of the plaintiff's claims, the plaintiff would not have been able to carry his burden of proof at the summary judgment stage.

The plaintiff also seeks reconsideration of the court's decision granting partial summary judgment to the defendants. As set forth above, a motion to reconsider is not an opportunity to rehash arguments already made or to present new argument or new evidence that could have been presented the first time around. Here, the plaintiff has, for the most part, done just that. He does not contend that there has been an intervening change of controlling law, and the court finds that he has not shown a clear error of law. Notably, the plaintiff fails to recognize the distinction between the standard of review for a Rule 56 motion as compared to a Rule 12 motion. To the extent he claims new evidence is available—in the form of the defendants' depositions—he has not shown how the defendants' testimony affects any factual findings made by the court in ruling on the Motion for Summary Judgment, and he did not make a timely request to supplement his Response to the Motion for Summary Judgment. Consequently, he has not established need to prevent manifest injustice. The plaintiff simply disagrees with the court's ruling, but that is not a viable basis for a motion to reconsider. Instead, these disagreements may form the basis for an appeal.

The plaintiff also objects to the court's finding that the Second Amended Complaint is the operative pleading in this case. He argues that the court erred in striking the Third Amended Complaint by "fiat" and that the only appropriate means of striking an amended complaint after it has been "accepted and docketed" is through voluntary supersession, striking under Rule 12(f) or by explicit court order, dismissal as a Rule 41(b) sanction, and by denial of leave to amend. (Doc.

No. 179 at 19.) The plaintiff argues in the alternative that his failure to file a timely revised Third Amended Complaint amounted to excusable neglect caused by procedural confusion, which this court should evaluate by considering prejudice, the length of any delay, the reason for the delay, control, and good faith. (*Id.* (citing *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006)).) He argues that these factors favor permitting him to belatedly file his revised Third Amended Complaint.

The court notes first that the Third Amended Complaint was never "accepted and docketed." As set forth in the Memorandum ruling on the defendants' Motion for Summary Judgment, the Order granting in part the motion for leave to file the Third Amended Complaint expressly directed the plaintiff to file a revised Third Amended Complaint that removed the proposed new defendants no later than May 12, 2025. (Doc. No. 134 at 1.) The plaintiff never did so. Moreover, the fact that he had not done so was highlighted in the defendants' Memorandum in support of their Motion for Summary Judgment, which pointed out that the plaintiff had never filed the revised Third Amended Complaint after having been directed to do so, presumed that the Second Amended Complaint remained the operative pleading, and did not address the new Open Meetings Act claim (or any other new claim) set forth in the original proposed Third Amended Complaint. (*See* Doc. No. 141 at 8 ("Plaintiff was directed to file a revised Third Amended Complaint by May 12, 2025. D.E. 134. Plaintiff has not done so. The Registry Defendants now move for summary judgment on each claim raised in the Second Amended Complaint.").) The plaintiff did not thereafter move to extend the date for filing the revised Third Amended Complaint; he did not address the issue in his Response to the Motion for Summary Judgment; and he did not oppose summary judgment on the grounds that it did not address claims raised in the Third Amended Complaint.

Under these circumstances, the court cannot find that the failure to file a proposed Third Amended Complaint at some date prior to now amounts to excusable neglect. There was nothing confusing about the court's Order directing the plaintiff to file a revised Third Amended Complaint by May 12, 2025, and the plaintiff has not shown good cause for his failure to timely serve the revised pleading upon the defendants and to file it with the court. At this juncture, the dispositive motion deadline has long-since expired, and trial is set to begin *in two weeks*. The court finds that the delay is excessive and that the prejudice to the defendants is apparent. The court will not reconsider its determination that the Second Amended Complaint is the operative pleading in this case, and it will not accept for filing the proposed revised Third Amended Complaint.

### III. CONCLUSION AND ORDER

For the reasons set forth herein, the plaintiff's Rule 11 motion (Doc. No. 180) and his Rule 54 motion (Doc. No. 178) are both **DENIED**.

The remaining claim in this matter remains set for trial on January 27, 2026.[4]

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge

---

[4] The defendants have signaled their intention to file a motion asking the court to decline to exercise supplemental jurisdiction over the sole remaining state law claim. The court would discourage such a motion. The factors that guide a court's analysis as to whether to exercise supplemental jurisdiction include "considerations of judicial economy, convenience and fairness to litigants." *Transcon. Leasing, Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Given that this case has been pending for more than three years, discovery has concluded, and this case is on the cusp of trial, the relevant factors would weigh in favor of the court's continuing to exercise supplemental jurisdiction over the plaintiff's slander claim, even if it arguably has the discretion to decline to do so. *Accord Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992) (finding that the district court did not abuse its discretion in denying a motion to remand where case had been on the district court's docket for almost two years and the parties had completed discovery and compiled a voluminous record").