IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARK CLAYTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:22-cv-00936 |
| | ) Judge Aleta A. Trauger |
| WILLIAM YOUNG *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM and ORDER**

Now before the court is the defendant's Motion in Limine No. 1 to Exclude Expert and Reputational Damages Testimony. (Doc. No. 186.) Pursuant to the Initial Case Management Order ("ICMO") entered in this case (Doc. No. 123), Federal Rules of Evidence 401, 402, 701, 702, 802, and 803, and Federal Rules of Civil Procedure 26 and 37, the defendant seeks to exclude any evidence and testimony relating to the contents of, and exhibits to, the Affidavits of Dr. Barbara C. Luna and Dr. William Davis Kenner (Doc. Nos. 186-1, 186-2), as well as any testimony or evidence regarding the "Reputational Cost Analysis Strategy by Edelman," as referenced in plaintiff Mark Clayton's Affidavit dated January 28, 2025 ("January 2025 Affidavit") (Doc. No. 186-3). Plaintiff Mark Clayton opposes the motion. (Doc. No. 201.)

For the reasons set forth herein, the motion will be granted in its entirety.

I.     **BACKGROUND AND LEGAL STANDARDS**

    A.     **The Plaintiff's Disclosure Obligations**

On December 9, 2024, after having dismissed the claims against most of the originally named defendants in this lawsuit and denied at least in part the Motion to Dismiss filed on behalf of defendants William Young, Tom Lawless, and Paige Bircham-Dennis (the "Registry

defendants"), the court entered the ICMO setting the dates for the progression of discovery and other pretrial matters as relevant to the claims against the three remaining Registry defendants. (Doc. No. 123.)

Among other things, the ICMO required the plaintiff to identify and disclose all expert witnesses and expert reports on or before May 30, 2025 and required the defendants to do so by June 30, 2025. (*Id.* ¶ H.) The staggered dates anticipated that the defendants' decision of whether to engage experts would, to a large extent, depend on whether the plaintiff disclosed any experts. May 30, 2025, however, passed without the plaintiff's disclosing any experts. The defendants, likewise, did not disclose any experts. Expert witness depositions were to take place by August 15, 2025. (*Id.* ¶ I.) Obviously, with no experts disclosed, no expert depositions were scheduled.

The Order Setting Case for Trial entered basically contemporaneously with the ICMO specified that parties were to exchange witness lists and "expert witness statements as described in Local Rule 39.01(c)(5)(E)" by January 20, 2026. (Doc. No. 124 ¶ 4(a) & (d).)

The plaintiff served his Witness and Exhibit List on the plaintiff on January 16, 2026, though he did not file it until February 19, 2026. (Doc. No. 221.) This list identifies the "Affidavit/Diagnosis of William Kenner, M.D.," the "Barbara Luna Forensic Audit of Earning Potential," and Clayton's January 2025 Affidavit. (*Id.* at 2–3 (citing Doc. No. 186-3).) Dr. William Kenner is identified as one of the plaintiff's witnesses. Barbara Luna is not. (*Id.* at 3.)

B. **Federal Rules of Civil Procedure 26 and 37**

In addition to the ICMO, Federal Rule of Civil Procedure 26 also requires the disclosure of any expert witness a party may use to present evidence at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(a)(2)(A). Any witness "retained or specially employed to provide expert testimony" must also submit a written report that includes a "complete statement of all opinions" the witness expects to offer, as well as the "basis and reasons for them,"

all facts or data considered by the witness in forming her opinions, supporting exhibits, the witness's qualifications, a list of other cases in which the witness has testified as an expert, and a statement of the witness's compensation by the party that engaged her. Fed. R. Civ. P. 26(a)(2)(B).

Expert disclosures are subject to the supplementation requirement set forth in Rule 26(e). Fed. R. Civ. P. 26(a)(2)(D). Rule 26(e) provides more specifically that a "party's duty to supplement extends both to information included in the report and to information given during the expert's deposition" and must be made not later than "the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e).

Federal Rule of Civil Procedure 37 states that a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

    **C.    Federal Rules of Evidence**

Rule 401 defines relevant evidence as evidence that "has any tendency to make a fact more or less probative than it would be without the evidence" *and* "is of consequence in determining the action." Fed. R. Civ. P. 401. As a general proposition, relevant evidence is admissible at trial; irrelevant evidence is not. Fed. R. Civ. P. 402. However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Civ. P. 403.

Federal Rule of Evidence 702 governs the use of expert testimony. This rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

     (b) the testimony is based on sufficient facts or data;

     (c) the testimony is the product of reliable principles and methods; and

     (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Generally, however, a lay witness—one not qualified as an expert—may offer testimony in the form of an opinion only if that opinion is

     (a) rationally based on the witness's perception;

     (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

     (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Hearsay is defined by the Federal Rules of Evidence as a statement that was not made by a declarant "while testifying at the current trial or hearing," that is offered as evidence by a party "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). An opposing party's out-of-court statement is not considered hearsay if it is "offered against [the] opposing party" and certain other conditions are satisfied. Fed. R. Evid. 801(d)(2). Hearsay is not admissible at trial unless subject to some exception. Fed. R. Evid. 802. Former testimony by a declarant (including a party) who *is* available as a witness at the present trial is generally not subject to any exception to the rule against hearsay. *See generally* Fed. R. Evid. 803, 804.

## II. DISCUSSION

### A. Luna and Kenner Affidavits

The defendant concedes that the plaintiff produced copies of the Luna and Kenner Affidavits. (*See* Doc. No. 186 at 1.)[1] However, she argues that the plaintiff never provided any expert disclosure or report, so "any testimony based on these retained experts should be 'automatically' excluded." (Doc. No. 186 at 2.) Second, she contends that the information included in the Luna and Kenner Affidavits regarding the plaintiff's financial and mental and emotional damages is all irrelevant, and therefore inadmissible, because it predates the Registry meeting that is the subject of the sole remaining claim against the sole remaining defendant.

The plaintiff effectively acknowledges that he did not "make formal expert disclosures under Rule 26(a)(2)," but, he argues, any violation of Rule 26(a)(2) was "harmless," because the witnesses were "known to all parties." (Doc. No. 201 at 2 (citing *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)).) He claims that Kenner and Luna were "identified at the outset of this litigation, their reports were disclosed and attached to the pleadings, and Defendants have known for more than a year the identities of these witnesses and the substance of their opinions." (*Id.*) Second, he maintains that the opinions of Luna and Kenner are not irrelevant, because they serve to establish the plaintiff's "baseline" psychological state and financial condition prior to the damage caused by the remaining defendant's conduct. (*Id.* at 3–5.)

In order to assess whether a party's omitted or late disclosure is "substantially justified" or "harmless," courts are to consider five factors:

---

[1] The defendant does not indicate when the plaintiff produced these Affidavits other than to note that they were provided with discovery responses or were attached to the Second Amended Complaint. (Doc. No. 186 at 2–3.) The court notes that the plaintiff attached the Kenner Affidavit to his Response to Metro Government Defendants' Motion to Dismiss on May 15, 2023. (Doc. No. 44-1.)

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). Notably, the plaintiff here bears "the burden of proving harmlessness or substantial justification." *Adkins v. Marathon Petroleum Co.*, 105 F.4th 841, 850 (6th Cir. 2024) (quoting *EQT Prod. Co. v. Phillips*, 767 F. App'x 626, 634 (6th Cir. 2019)).

To the extent the plaintiff is suggesting that Dr. Kenner was a treating physician and therefore not required to produce an expert report, he is incorrect. A plaintiff does not need to submit an expert report for a treating physician who "formed his causation opinions through the course of normal medical treatment of a patient." *Id.* at 849 (citing *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007)). However, if the treating physician was "retained or specially employed to provide expert testimony," Fed. R. Civ. P. 26(a)(2)(B), and "'formed his opinion at the request of [the patient's] counsel' and 'in anticipation of litigation,' courts should treat the physician as a retained expert and require compliance with Rule 26, including the production of a report," *Adkins*, 105 F.4th at 849 (quoting *Fielden*, 482 F.3d at 869, 871).

Here, Dr. Kenner was not simply a treating physician. His Affidavit explains that he was "hired to evaluate Mark Clayton to determine the psychiatric effect of the ordeal he went through" that forms the basis for his claims against the defendants who were dismissed from this lawsuit early in the proceedings. (Doc. No. 186-2, Kenner Aff. ¶ 4.) In other words, Kenner was hired specially as an expert, and his opinion that the (dismissed) defendants caused or exacerbated the plaintiff's mental health condition was not reached during "the course of normal medical treatment

of a patient." *Adkins*, 105 F.4th at 849. The plaintiff, therefore, was required to submit an expert report for him.

The plaintiff has not established that his failure to disclose Kenner and Luna as experts was harmless. First, merely producing affidavits from these witnesses was not sufficient to alert the Registry defendants that Clayton intended to call them as experts, particularly given that the Affidavits appeared to be unrelated to the claims against the Registry defendants (as discussed below). Second, because the plaintiff did not disclose any witnesses as experts, the Registry defendants did not disclose their own experts or depose Kenner and Luna, and doing either now would be disruptive to the trial schedule. Third, the Affidavits themselves and their attached exhibits do not provide much of the information normally required to be included in an expert report, including how the experts reached their opinions. Finally, and critically, any relevance the proffered testimony might possibly have is marginal at best, as discussed below.

Applying the *Howe* factors, the court finds that the plaintiff has not established that his failure to disclose experts and provide expert reports was substantially justified or harmless, and the proffered evidence is subject to exclusion on that basis.[2] Of particular importance to the court's conclusion is the fact that the Affidavits do not appear to be relevant—and the Registry defendants had no reason to think they would be relevant to the claims against them.

The operative pleading discusses at great length the plaintiff's problems with Nashville's Metro Water Services from approximately 2016 through his arrest in 2019 and then his allegedly malicious prosecution by the Nashville District Attorney's Office from 2019 through 2021. The plaintiff's claims relating to these events were dismissed.(Doc. No. 70.) The plaintiff's remaining

---

[2] The court further notes that the plaintiff has not identified Luna as a witness on his witness list. It is not clear how he intended to introduce the Luna Affidavit—which clearly qualifies as hearsay—into evidence.

claim in this action arises from his attending a Tennessee Registry of Election Finance meeting that took place on May 18, 2022. (*See* Second Am. Compl., Doc. No. 90 ¶¶ 94–116.) The plaintiff asserts that he was slandered and suffered mental and emotional distress relating to the Registry defendants' actions at that meeting. Unrelatedly, the plaintiff alleges that Dr. Kenner "determined he had suffered 'significant mental distress' related the arrest and prosecution resulting from actions Plaintiff took to resolve his water issues." (*Id.* ¶ 234.) Clayton does not plead facts suggesting that Dr. Kenner had any opinion about the damages he suffered arising from the 2022 Registry meeting.

Dr. Kenner, a licensed psychiatrist and professor of psychiatry, states in his Affidavit that he had two telehealth interviews with Clayton in October and December 2020, "collateral interviews" with other individuals in December 2020 and February 2021, and reviewed documents dating from 2018 and 2020. (Kenner Aff. ¶ 5.) Based on information obtained from these interviews and materials, Dr. Kenner diagnosed Clayton with a "adjustment order unspecified" and opined that the plaintiff's "struggle with Metro Nashville Government over his water problems" and his "arrest and prosecution . . . for actions he took to resolve his water issue" had caused him significant emotional distress. (*Id.* ¶¶ 6, 7.)

Dr. Luna states in her Affidavit that she was retained by Clayton to offer an opinion regarding the economic losses he suffered "resulting from his present dispute" and to "provide expert testimony." (Doc. No. 186-1, Luna Aff. ¶¶ 2, 4.) The "present dispute" is not defined, but Dr. Luna provides her opinion regarding the cost to repair a bridge at the plaintiff's residence, plus associated miscellaneous out-of-pocket costs. (*See* Doc. No. 186-1 at 6–7.) All of the costs itemized by Dr. Luna date from 2019 through 2021—again predating the May 2022 Registry meeting. (*See id.* at 8–20.)

While recognizing that Kenner's and Luna's testimony has little tie to the issues remaining to be resolved in this lawsuit, the plaintiff nonetheless argues that the opinions are relevant to show his "preexisting vulnerability" and "economic baseline and exacerbation." (Doc. No. 201 at 4.) Aside from the fact that the plaintiff did not identify them for that purpose or provide expert reports for either Kenner or Luna, Dr. Kenner's unexplained statement that the plaintiff was diagnosed with "adjustment disorder unspecified" in 2021 does not make any fact at issue now either more or less probative. Likewise, Dr. Luna's detailed assessment as to the predicted costs to rebuild a bridge on the plaintiff's property, under four different scenarios, is not relevant to anything other than the cost of rebuilding the bridge and is not "of consequence in determining the action." Fed. R. Civ. P. 401. Because they are not relevant, the Affidavits are not admissible. Fed. R. Civ. P. 402. And even if the Affidavits had some minor marginal relevance, their probative value is substantially outweighed by danger of confusing the issues, misleading the jury, and wasting time. Fed. R. Civ. P. 403.

> **B.** **Edelman Report and Computation of "Reputation Repair Damages"**

The plaintiff also identifies his January 2025 Affidavit as an exhibit to be introduced at trial. (Doc. No. 186-3.) Aside from the obvious problem that the Affidavit is hearsay as to which no exception appears to apply, the defendant seeks to bar Clayton from testifying about the substance of the Affidavit—that is, to prevent him from expressing opinions based on "Edelman" as to the actions Clayton needs to take to restore his reputation and the estimated cost of those actions. (Doc. No. 186-3 at 2.) The January 2025 Affidavit apparently relies on a "strategy to repair" reputational damage "outlined" by this Edelman. (*Id.*) This "strategy," following "Edelman's approach," includes:

**1. Immediate Reputational Restoration:**

- Launching a **global media campaign** to correct false claims, secure public retractions, and widely disseminate evidence of my innocence.

- Utilizing **SEO and digital suppression** techniques to reduce the visibility of defamatory content while promoting accurate and positive narratives.

- Producing a professional **documentary or public statement** that reaches a global audience, laying out the facts and restoring my credibility.

**2. Long-Term Reputation Building:**

- Creating ongoing **positive content**, such as interviews, articles, and multimedia features, to showcase my integrity, achievements, and contributions.

- Initiating **philanthropic projects** that not only demonstrate my values but also contribute to society in meaningful ways.

- Employing **social media rebranding** and securing **speaking engagements** to rebuild my image as a trusted and inspiring figure.

**3. Legacy and Posthumous Protection:**

- Preserving my story through **digital archives** and ensuring that my innocence and achievements remain accessible for future generations.

- Establishing a **memorial campaign** with pre-planned obituaries and biographies in high authority outlets to cement my legacy as someone who overcame false accusations.

- Maintaining **active monitoring** to guard against any resurgence of the false narrative.

(*Id.* (emphasis in original).) Clayton does not indicate that he has incurred actual costs to restore his reputation, but he estimates that the cost of implementing this strategy would be $17,810,000. (*Id.* at 3.)

The defendant argues that the incorporation of "Edelman information" into the January 2025 Affidavit (or the plaintiff's trial testimony) is inadmissible hearsay, and, in any event, the plaintiff has never supplied the Edelman report on which he relies. She also argues that the plaintiff

himself is not qualified as an expert to testify about the estimated cost breakdown contained in his Affidavit or the other information gleaned verbatim from Edelman. She argues that, even if relevant, the information should be excluded under Rule 403 as more prejudicial and confusing than probative. (Doc. No. 186 at 4–5.)

Clayton responds that there is no "Edelman report" to disclose.[3] Instead, he "reviewed publicly available information on Edelman's website describing reputation-management services and prepared his own good-faith estimate of remediation costs." (Doc. No. 201 at 5–6.) He contends that his proposed testimony "concerning his own research and anticipated costs constitutes admissible lay testimony under Rule 701." (*Id.* at 6.)

As set forth above, a lay witness may offer testimony in the form of an opinion so long as his opinion is "rationally based on the witness's perception," helpful to the jury, and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. It is very clear that the plaintiff's opinion formed from his purview of information available on a reputational remediation expert's website is not based on his own perception and is, instead, based on specialized knowledge that falls within the scope of Rule 702. The plaintiff may offer evidence of damage to his reputation and standing in the community, as well as evidence regarding the effect of the reputational damages on his earnings. He may not, however, offer his

---

[3] In response to the defendants' Request for Production of Documents No. 9, the plaintiff referenced his "affidavit sent with initial disclosures," by which the court presumes he was referring to the January 2025 Affidavit or a similar earlier affidavit, and he purported to "correct" it, stating "the numbers provided [in the affidavit] are developed by Plaintiff's computations prior to discussing with Edelman but it is based on the range in Edelman's documentation. Edelman has not provided numbers yet. This production will be supplemented once final numbers are available." (Doc. No. 187-2, Resp. No. 9.) This response certainly suggested that the plaintiff was consulting with Edelman and that he anticipated producing a report from Edelman.

own opinions regarding the necessary steps to remediate his reputation or the cost of reputation remediation that he gleaned or extrapolated from Edelman's website.[4]

### III. CONCLUSION AND ORDER

For the reasons set forth herein, the defendant's Motion in Limine No. 1 is **GRANTED**. The plaintiff may not offer into evidence the Luna Affidavit or the Kenner Affidavit, or testimony from either Dr. Kenner or Dr. Luna regarding the plaintiff's mental health or financial damages that predate the May 18, 2022 meeting at issue in this lawsuit. The plaintiff may offer his own testimony regarding his damages, including evidence of damage to his reputation and standing in the community and actual damages resulting therefrom, including out-of-pocket costs and loss of income. He may not offer testimony based on information gleaned from a website on reputation remediation or about the potential future costs of reputation remediation.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge

---

[4] More to the point, under Tennessee law, "a plaintiff is required to prove actual damages in all defamation cases." *McWhorter v. Barre*, 132 S.W.3d 354, 366 (Tenn. Ct. App. 2003) (quoting *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997)). Such actual damages typically include out-of-pocket losses, as well as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* While courts appear to have allowed plaintiffs to recover the actual, proven costs of reputation remediation, *see, e.g.*, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *BDO USA, P.C. v. JSCo Enters.*, No. N22C-12-063 KSM CCLD, 2025 WL 2390920, at *10 (Del. Super. Ct. Aug. 14, 2025); *Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 160 (Tex. 2014), speculative damages about the possible future costs of reputation remediation that the plaintiff has not actually incurred do not appear to fall under the category of "actual damages."